James B. King, WSBA #8723
Evans, Craven & Lackie, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(t) (509) 455.5200
(f) (509) 455.3632
jking@ecl-law.com

Brian Tully McLaughlin, *pro hac vice*
Lyndsay A. Gorton, *pro hac vice*
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(t) (202) 624.2500
(f) (202) 628.5116
BMcLaughlin@crowell.com
LGorton@crowell.com

*Counsel for Defendants Cardinal
Health, Inc., Cardinal Health 414, LLC
d/b/a Cardinal Health Nuclear
Pharmacy Services, and Cardinal
Health 200, LLC*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA, *ex rel.* UPPI, LLC,**<br><br>Plaintiff-Relator,<br><br>v.<br><br>**CARDINAL HEALTH, INC., *et al.*,**<br><br>Defendants. | Case No.  2:17-cv-378-RMP<br><br>**MOTION TO DISMISS AND MEMORANDUM IN SUPPORT BY CARDINAL HEALTH, INC., CARDINAL HEALTH 414, LLC, AND CARDINAL HEALTH 200, LLC**<br><br>Hearing Date: March 9, 2021<br>Without Oral Argument |

Cardinal Health Motion to Dismiss and Memorandum
in Support

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2

## **TABLE OF CONTENTS**

I.   Introduction ...................................................................................1

II.   Factual Background .......................................................................3

    A.   The Radiopharmaceutical Contracts at Issue .......................3

    B.   The SDVOSB Awards and Subcontracting Provisions .....................6

    C.   The Government Knew of Cardinal Health's Role............................11

    D.   Relator's Claims and Procedural History............................12

III.   Argument ....................................................................................12

    A.   Pleading Standards ...............................................................12

        1.   Rules 8(a) and 12(b)(6) ..............................................12

        2.   Rule 9(b)'s Particularity Requirement ......................13

    B.   Legal Requirements to State a Claim Under the FCA .....................14

    C.   Relator's Theories of Fraud....................................................15

    D.   The Amended Complaint Fails to Plead a Violation of the
False Claims Act with Plausibility or Particularity
Pursuant to Rules 8(a), 9(b), and 12(b)(6) ...........................18

        1.   Relator Fails to Plead Falsity ....................................18

            a.   No Subcontracting Limitation Applies to
Five of the Eight Contracts..............................18

            b.   The Amended Complaint Fails to Plead
Fraud with Particularity ..................................19

            c.   Relator's Implied Certification Theory Fails .................23

            d.   Relator's Claim of Conspiracy Fails ..............................24

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3623

2.    Cardinal Health Did Not *Cause* the SDVOSBs to Present or Make Any False or Fraudulent Claims or Statements to the VA ...........................................25

3.    Cardinal Health Did Not *Knowingly* Cause Any False Statements or False Claims ..............................29

4.    The Alleged Fraud Was Not Material to Any Government Decision to Pay A Claim ....................35

IV.    Conclusion ........................................................................43

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page ii

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adomitis ex rel. United States v. San Bernardino Mountains*
    *Cmty. Hosp. Dist.,*
    816 F. App'x 64 (9th Cir. 2020) ........................................................31

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................13, 30, 31

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................13

*Bly-Magee v. Cal.,*
    236 F.3d 1014 (9th Cir. 2001) ..........................................13, 14

*Ebeid ex rel. United States v. Lungwitz,*
    616 F.3d 993 (9th Cir. 2010) ........................................13, 14, 16

*Gonzalez v. Planned Parenthood of L.A.,*
    759 F.3d 1112 (9th Cir. 2014) ........................................30, 31, 35

*Hagood v. Sonoma Cnty. Water Agency,*
    81 F.3d 1465 (9th Cir. 1996) ........................................................30

*Hooper v. Lockheed Martin Corp.,*
    688 F.3d 1037 (9th Cir. 2012) ........................................................15

*In re BP Lubricants USA Inc.,*
    637 F.3d 1307 (Fed. Cir. 2011) ........................................................33

*In re Century Aluminum Co. Sec. Litig.,*
    729 F.3d 1104 (9th Cir. 2013) ........................................................31

*Lee v. City of L.A.,*
    250 F.3d 668 (9th Cir. 2001) ........................................................7

*Parrino v. FHP, Inc.,*
    146 F.3d 699 (9th Cir. 1998) ........................................................7

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page iii

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

*Pencheng Si v. Laogai Rsch. Found.*,
    71 F. Supp. 3d 73 (D.D.C. 2014)...................................................................24

*Ruckh v. Salus Rehab., LLC*,
    963 F.3d 1089 (11th Cir. 2020) .................................................................27

*United States ex rel. Berg v. Honeywell Int'l, Inc.*,
    740 F. App'x 535 (9th Cir. 2018) ..............................................................37

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...................................................................13

*United States ex rel. Campie v. Gilead Scis., Inc.*,
    862 F.3d 890 (9th Cir. 2017) ...................................................14, 17, 34, 36

*United States ex rel. Complin v. N.C. Baptist Hosp.*,
    818 F. App'x 179 (4th Cir. 2020) ..............................................................32

*United States ex rel. Hendow v. Univ. of Phx.*,
    461 F.3d 1166 (9th Cir. 2006) .............................................................16, 17

*United States ex rel. Hopper v. Anton*,
    91 F.3d 1261 (9th Cir. 1996) ..........................................17, 29, 30, 35

*United States ex rel. Kelly v. Serco, Inc.*,
    846 F.3d 325 (9th Cir. 2017) ...............................................................24, 40

*United States ex rel. Kelly v. Serco, Inc.*,
    No. 11cv2975 WQH-RBB, 2014 WL 4988462 (S.D. Cal.
    Oct. 6, 2014) ..............................................................................................15

*United States ex rel. Lewis v. Cal. Inst. of Tech.*,
    No. 2:18-cv-05964-CAS(RAOx), 2019 WL 5595046 (C.D. Cal.
    Oct. 28, 2019) ............................................................................................24

*United States ex rel. Marcus v. Hess*,
    317 U.S. 537 (1943).....................................................................................25

*United States ex rel. Marion v. Heald Coll., LLC*,
    No. 5:12-cv-02067-PSG, 2015 WL 4512843 (N.D. Cal.
    July 24, 2015)..............................................................................................15

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page iv

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

*United States ex rel. McBride v. Halliburton Co.*,
    848 F.3d 1027 (D.C. Cir. 2017) ...........................................................40

*United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
    608 F.3d 871 (D.C. Cir. 2010) ......................................................15, 24

*United States ex rel. Oliver v. The Parsons Corp.*,
    498 F. Supp. 2d 1260 (C.D. Cal. 2006) .............................................15

*United States ex rel. Petratos v. Genentech Inc.*,
    855 F.3d 481 (3d Cir. 2017) ...............................................................40

*United States ex rel. Pilecki-Simko v. Chubb Inst.*,
    443 F. App'x 754 (3d Cir. 2011) ........................................................32

*United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*,
    690 F.3d 951 (8th Cir. 2012) ..............................................................32

*United States ex rel. Rose v. Stephens Inst.*,
    909 F.3d 1012 (9th Cir. 2018) ............................................................16

*United States ex rel. Savage v. Wash. Closure Hanford LLC*,
    No. 2:10-CV-05051-SMJ (E.D. Wash. Aug. 24, 2017) ....................42

*United States ex rel. Schwedt v. Planning Rsch. Corp.*,
    59 F.3d 196 (D.C. Cir. 1995) .............................................................27

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield
    of Utah*,
    472 F.3d 702 (10th Cir. 2006) ...............................................26, 28, 29

*United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
    336 F.3d 375 (5th Cir. 2003) ..............................................................21

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) ..............................................................31

*United States v. Bornstein*,
    423 U.S. 303 (1976)........................................................................26, 29

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

*United States v. Hibbs*,
    568 F.2d 347 (3d Cir. 1977) ...................................................................27

*United States v. Honeywell Int'l, Inc.*,
    No. LA CV12-02214 JAK (JCGx), 2014 WL 12579803 (C.D. Cal.
    Jan. 24, 2014)..........................................................................................33

*United States v. Luce*,
    873 F.3d 999 (7th Cir. 2017) ..................................................................27

*United States v. Mackby*,
    261 F.3d 821 (9th Cir. 2001) ..................................................................25

*United States v. Monaco Enters., Inc.*,
    No. 2:12-CV-0046-LRS, 2016 WL 3647872 (E.D. Wash.
    July 1, 2016)......................................................................................17, 21

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) ............................................................13, 21

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
    136 S. Ct. 1989 (2016)....................................................................*passim*

*Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*,
    953 F.3d 1108 (9th Cir. 2020) ..................................................................14

**Statutes**

31 U.S.C. § 3729....................................................................................25

31 U.S.C. § 3729(a)(1)(A) ...............................................................*passim*

31 U.S.C. § 3729(a)(1)(B) ................................................12, 14, 25, 30

31 U.S.C. § 3729(a)(1)(C) ................................................12, 14, 15, 24

31 U.S.C. § 3729(b)(1)(A) .....................................................................30

31 U.S.C. § 3729(b)(4)............................................................................36

38 U.S.C. § 8127(a)(1)..............................................................................6

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

38 U.S.C. § 8127(d) ..................................................................................6

**Regulations**

13 C.F.R. § 125.6 ....................................................................................9

48 C.F.R. Part 852.219-10 .........................................................................9

48 C.F.R. § 19.102 ...................................................................................9

48 C.F.R. § 52.219-14 ...............................................................................9

48 C.F.R. § 52.219-27 ...........................................................................9, 10

**Rules**

Fed. R. Civ. P. 8 .............................................................................*passim*

Fed. R. Civ. P. 9(b) ........................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ....................................................................1, 18, 43

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

## I.   INTRODUCTION

Defendants Cardinal Health, Inc., Cardinal Health 414, LLC, and Cardinal Health 200, LLC (collectively "Cardinal Health") respectfully submit this Motion to Dismiss Relator UPPI, LLC's ("UPPI" or "Relator") Amended Complaint, ECF No. 37, ("Amended Complaint" or "Compl.") pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).

Relator, UPPI, an organization of competitor pharmacies dedicated to "promot[ing] the business interests" of its members, Compl. ¶ 9, brings this False Claims Act ("FCA") suit, asserting that Cardinal Health and two service-disabled veteran-owned small businesses ("SDVOSBs"), Caring Hands Home Health Equipment & Supplies LLC ("Caring Hands") and Logmet Solutions, LLC ("Logmet"), engaged in a fraudulent scheme to win supply contracts for specialized radiopharmaceuticals at several Department of Veterans Affairs ("VA") medical centers.  UPPI asserts that the SDVOSB entities duped the VA into awarding these contracts to them directly by falsely stating in their bids that they were capable of supplying those nuclear products independently and in compliance with a subcontracting clause precluding them from obtaining the products from a large business like Cardinal Health.

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

But this case is really not about fraud. Rather, it is about UPPI's disagreement with the manner in which Government contracting officials at several VA medical centers applied small business preferences in the award of these contracts. In fact, UPPI has named these contracting officials and other VA personnel as "Doe" defendants, groundlessly speculating that they acted in "bad faith" and were "complicit" in the supposed fraud. Compl. ¶ 160.

Far from pleading its claims of fraud with plausibility and particularity, however, UPPI's Amended Complaint backs itself into a corner that compels dismissal. Instead of particular false statements, Relator pleads only vague, conclusory allegations and "implicit" misrepresentations by the SDVOSBs, all the while acknowledging that the SDVOSBs disclosed their use of Cardinal Health to the VA. UPPI even misstates the very applicability or existence of the subcontracting provision that is essential to its claims.

The Amended Complaint's failures are all the more plain with respect to Cardinal Health. UPPI fails to provide a causal nexus between Cardinal Health's agreement to supply the products and the misrepresentations allegedly made in the SDVOSBs' bids. And UPPI can only speculate that Cardinal Health knew of any false statements allegedly made by the SDVOSBs or was even aware of any applicable subcontracting limitation in the contracts. Moreover, far from showing

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

that any subcontracting clause was a limitation that was material to payment, Relator's Amended Complaint instead demonstrates that the VA was aware and approving of Cardinal Health's supplier role, pre- and post-award.

UPPI's Amended Complaint is also entirely devoid of the required particularity. UPPI offers no specifics of any fraudulent statements for any of the contracts, from their content to when they were made and by whom, or how those unspecified statements influenced the VA's decision-making process. Nor does it allege any details as to how Cardinal Health caused those statements to be made.

Whatever virtue there might be to UPPI's concern about VA's application of its contracting policies, a False Claims Act suit is not the proper means to address it. UPPI's deficient pleading should be dismissed.

## II.    FACTUAL BACKGROUND

### A.    The Radiopharmaceutical Contracts at Issue

This case centers on supply contracts issued by the VA to purchase radiopharmaceutical isotopes for specialized treatments at several VA medical centers scattered across the United States. Radiopharmaceuticals are medical products that contain radioactive material. Generally, those products are used for diagnostic and therapeutic (*e.g.*, radiography, cancer treatment) purposes. Compl. ¶ 2. Radiopharmaceuticals are compounded in nuclear pharmacies by nuclear pharmacists and must meet stringent requirements for licensure. *Id.* ¶¶ 43-45.

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 3

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

Radiopharmaceuticals have a very short shelf life requiring a quick delivery time to the medical center, which in turn requires the nuclear pharmacies to be located in close proximity to the medical centers that use them. *See id*. ¶ 40.  Because radiopharmaceuticals contain radioactive material and result in hazardous waste after use, they are highly regulated by federal and state agencies, including the Nuclear Regulatory Commission.  *Id*. ¶¶ 40-41.  Suppliers of radiopharmaceuticals must therefore have specialized licenses from the NRC or a state agency.  *Id*. ¶ 46.

The solicitations issued by the VA contain a multitude of technical requirements, including:  specialized nuclear licenses for possessing, compounding, and distributing radiopharmaceutical isotopes; removal specifications for hazardous waste, which also require specialized licensing; a proximate nuclear pharmacy able to take and fill daily orders and deliver them within an hour, and many more. *See, e.g.*, Compl. ¶¶ 48-49, 69-78.  In short, VA's supply contracts required proof of an entity operating a licensed nuclear pharmacy close to the VA medical center requesting the radiopharmaceuticals.

Defendant Cardinal Health operates the largest radiopharmaceutical network in the United States, with some 130 nuclear pharmacies located across the country. *See* https://www.cardinalhealth.com/en/product-solutions/pharmaceutical-products/nuclear-medicine/radiopharmacy-locations.html (last visited Dec. 4,

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 4

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

2020).  Defendant Caring Hands is an SDVOSB located in Ridgeland, South Carolina that does not hold nuclear licenses or operate nuclear pharmacies; Caring Hands is "engaged in providing home healthcare services, supplying durable medical equipment," and has only "ten employees."  *See* Compl. ¶¶ 15, 50, 82-85. Defendant Logmet is an SDVOSB located in Decatur, Georgia that similarly does not hold nuclear licenses or operate nuclear pharmacies; Logmet's only business addresses are a single-family residence and a rental unit in an office complex, both in Georgia.  *See id*. ¶¶ 17, 50, 86-88.  Simply put, there was no conceivable way that the VA could conclude that either SDVOSB was capable of supplying the radiopharmaceuticals on its own.[1]

Nevertheless, that is precisely what Relator, UPPI, an association for other nuclear pharmacies, alleges—that the SDVOSB Defendants misled the VA into awarding purchase contracts to them for these highly regulated radiopharmaceuticals under the pretense that the SDVOSBs were themselves capable of supplying those products.

---

[1] And Relator's own pleadings show that the VA knew of Cardinal Health's involvement, yet awarded the contracts anyway.  *See, e.g.*, Compl. ¶ 95.

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 5

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

**B.     The SDVOSB Awards and Subcontracting Provisions**

Subchapter II of Title 38, entitled Procurement and Supply, provides for the VA to award a significant percentage of contracts to small businesses, in particular SDVOSBs, "[i]n order to increase contracting opportunities" for those entities.  38 U.S.C. § 8127(a)(1); *see also* Compl. ¶ 28.  As part of the Veterans Benefits, Health Care, and Information Technology Act of 2006, Congress created the "Rule of Two," requiring VA contracting officers to prioritize the award of contracts to SDVOSBs.  38 U.S.C. § 8127(d).  This Act provides that VA

> shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans . . . if the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans . . . will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States.

*Id*.; *see also* Compl. ¶ 29.  The acquisition must be a set-aside if these prerequisites are satisfied.  *Id*.; Compl. ¶ 33.

For the awards relevant here,[2] the VA issued solicitations for contracts to supply radiopharmaceuticals to seven VA medical centers and hospitals.  Compl.

_____

[2] True and correct copies of the relevant contracts between Caring Hands and Logmet and the VA are attached as Exhibits 1-8 to the Declaration of Brian Tully McLaughlin filed concurrently with this memorandum.  Relator refers to and

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 6

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2      ¶¶ 58, 62.  Some solicitations contemplated awards of indefinite delivery indefinite
3
4      quantity ("IDIQ") contracts of one base period and up to four option periods to be
5
6      exercised as delivery orders; others were for shorter, fixed periods.  *See generally*
7
8      Exs. 1-8; *see also* Compl. ¶¶ 58 nn.1-5, 62 nn.6-7.  The terms and conditions are
9
10     included in the base contract / IDIQ and remain the same for each delivery order.
11
12              When a set-aside solicitation for radiopharmaceuticals was issued by VA,
13
14     the SDVOSB submitted a proposal.  As the SDVOSBs' supplier, but not a party to
15
16     the contract with VA, Cardinal Health's role in the proposal process was merely to
17
18     (i) confirm its ability to supply the various radiopharmaceutical products requested
19
20     and meet the applicable technical requirements and (ii) provide its own prices to
21
22     the SDVOSB for the given location.  *See* Compl. ¶ 51.  Cardinal Health was not
23
24     involved in the SDVOSBs' drafting of its proposal submitted to the VA, how the
25
26     SDVOSB priced its bid, or any certifications or statements made by the SDVOSBs
27
28
29
30

---

necessarily relies on these contracts and their terms in the Amended Complaint.

*See, e.g.*, Compl. ¶¶ 58 nn.1-5, 62 nn.6-7.  They are therefore properly before the

Court on this motion to dismiss.  *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th

Cir. 2001); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by*

*statute on other grounds*.

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

in their bids, whether related to small business or otherwise (nor does the Amended Complaint allege otherwise).

Between 2013 and 2016, the VA awarded contracts for the supply of radiopharmaceuticals to Caring Hands and Logmet as follows:

| Contract | SDVOSB | VA Location | Ex. |
| --- | --- | --- | --- |
| VA246-14-D-0022 | Caring Hands | Durham VA Medical Center (Durham, NC) | 1 |
| VA247-14-C-0365 | Caring Hands | W.J.B. Dorn VA Medical Center (Columbia, SC) | 2 |
| VA248-14-D-0216 | Caring Hands | Miami VA Medical Center (Miami, FL) | 3 |
| VA248-15-D-0013 | Caring Hands | Miami VA Medical Center (Miami, FL) | 4 |
| VA247-15-Q-0193 | Caring Hands | Birmingham VA Medical Center (Birmingham, AL) | 5 |
| VA257-17-D-0008 | Caring Hands | South Texas Veterans Healthcare System Audie L. Murphy VA Medical Center (San Antonio, TX) | 6 |
| VA259-16-D-0159 | Logmet | VA Eastern Colorado Healthcare System (Denver/Aurora, CO) | 7 |
| VA258-17-D-0029 | Logmet | New Mexico VA Healthcare System (Albuquerque, NM) | 8 |

Exs. 1-8; *see also* Compl. ¶¶ 58 nn.1-5, 62 nn.6-7.

Some, *though not all*, of these contracts incorporated a provision that is unique to set-aside contracts for small businesses—a limitation on subcontracting. That limitation clause states, in pertinent part, as follows:

> A service-disabled veteran-owned small business concern agrees that in the performance of the contract, in the case of a contract for—

Cardinal Health Motion to Dismiss and Memorandum in Support: Page 8

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

> (2) Supplies (*other than acquisition from a nonmanufacturer of the supplies*), at least 50 percent of the cost of manufacturing, excluding the cost of materials, will be performed by the concern or other [SDVOSBs].

Federal Acquisition Regulation ("FAR") 52.219-27(d) (Nov. 2011) (emphasis added); FAR 52.219-14(c) (Nov. 2011); VAAR Part 852.219-10(d) (Dec. 2009).[3] Because the SDVOSBs were *not* manufacturers of the radiopharmaceuticals, the 50% cost of manufacturing limitation did not apply.  Instead, another clause in the regulation provided that, as a nonmanufacturer, the SDVOSB could supply the products of another small business manufacturer.  *See, e.g.*, Ex. 9 (FAR 52.219-27(f) (citing FAR 19.102(f) (Ex. 11)).  Alternatively, the VA contracting officer could request that this requirement be waived to permit the SDVOSB to purchase products from a large business.  FAR 19.102(f)(5) (Ex. 11).

Notably, however, and contrary to the Amended Complaint's broad allegations, this subcontracting limitation did not even apply to at least *five* of the

---

[3] The relevant FAR / VAAR clauses are attached as Exhibits 9-12.  The Amended Complaint (¶¶ 36-37) cites 13 C.F.R. § 125.6 for the applicable subcontracting limitation.  While that provision is similar, 13 C.F.R. § 125.6 is not included in any of the contracts at issue.  *See* Exs. 1-8.  And, as explained above, nor is it accurate to characterize the subcontracting limitation, as the Relator incorrectly does, as being tied to "50% of the work."  *See, e.g.*, Compl. ¶ 36.

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 9

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1  eight contracts at issue.  First, the subcontracting clause "applies only

2  to . . . [c]ontracts that have been set aside for [SDVOSBs]."  *See, e.g.*, FAR

3  52.219-27(b).  But the Miami contract was an unrestricted award.  *See* Exs. 3, 4.[4]

4  For Albuquerque, the alleged subcontracting limitation was not even incorporated

5  into the contract.  Ex. 8.  And at Dorn, the VA issued an amendment to the contract

6  clarifying that it was not subject to a limitation on subcontracting when awarded.[5]

7  Ex. 13 at 1 (Addendum); *id*. at 21 of 30.  Finally, for Denver, an express waiver of

8  the subcontracting limitation was granted, which Relator acknowledges.  Compl.

9  ¶ 65.[6]  In sum, the subcontracting limitation at the heart of Relator's case applies at

10  most to three contracts (Durham, Birmingham, and San Antonio).[7]

---

[4] The original Miami contract, VA248-14-D-0216, was a set-aside for small

businesses awarded on October 15, 2014, but the Miami VA re-awarded it as an

*unrestricted* contract just a few weeks later (VA248-15-D-0013, awarded

November 10, 2014).

[5] A true and correct copy of Contract No. 36C247-19-P-1190, the "bridge" contract

for Dorn, and addendum are attached as Exhibit 13.

[6] Relator admits that Logmet's Denver, Colorado contract included a waiver of the

nonmanufacturer rule that permitted Logmet to provide radiopharmaceuticals

manufactured by a large business.  Compl. ¶ 65.  A true and correct copy of the

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

After award, Cardinal Health supplied the radiopharmaceuticals to VA pursuant to a supply agreement with the SDVOSB.  *See id.* ¶¶ 65, 101.  The VA placed daily orders directly with Cardinal Health, and Cardinal Health supplied the radiopharmaceuticals directly to the VA.  *See id.* ¶ 101.

## C.    The Government Knew of Cardinal Health's Role

The Amended Complaint concedes that Cardinal Health's role in support of the SDVOSBs' contracts was disclosed to the VA both before and after award.  For example, in their proposals the SDVOSBs identified Cardinal Health as the radiopharmaceutical supplier and submitted Cardinal Health's licenses to meet the solicitation's minimum requirements.  Compl. ¶ 95.  Further, the VA directly ordered the radiopharmaceuticals from Cardinal Health's pharmacies.  *Id.* ¶ 101.  Indeed, Relator's allegations explain how the VA knew, for each contract it awarded, that the SDVOSBs were not manufacturers, that it would not have been possible for Caring Hands or Logmet to supply the radiopharmaceuticals

---

waiver issued for that solicitation, No. VA259-15-R-0363, which was awarded as Contract No. VA259-16-D-0159, is attached as Exhibit 14.

[7] Even when a limitation on subcontracting clause applied, it was hardly conspicuous; the clause was often incorporated only by reference and without its text.  *E.g.*, Ex. 1 at 13 (Durham); Ex. 6 at 19 (San Antonio).

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

themselves and, further, that Cardinal Health (a large business) would do so. *See id.* ¶¶ 91-92; *see also id.* ¶¶ 49, 51 (SDVOSBs did not have nuclear pharmacies and their lone offices were not even located near the VA medical centers).

### D.  Relator's Claims and Procedural History

Relator claims three alleged violations of the FCA under 31 U.S.C. § 3729(a)(1)(A)-(C) based on allegedly express and implied false certifications and promissory fraud: (1) the SDVOSBs presented false claims to the Government, and that Cardinal Health caused the presentment of these claims; (2) the SDVOSBs made or used false statements material to their false claims, and that Cardinal Health caused the misconduct; and (3) Caring Hands, Logmet, and Cardinal Health conspired to violate the FCA. *Id.* ¶¶ 26-27.

The initial complaint in this litigation was filed under seal on November 14, 2017—more than three years ago. ECF No. 1. On May 6, 2020, after an extensive investigation, the United States declined to intervene in this lawsuit. ECF No. 30. Relator filed the Amended Complaint on August 25, 2020. ECF No. 37.

## III.  ARGUMENT

### A.  Pleading Standards

#### 1.  Rules 8(a) and 12(b)(6)

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to allege facts that, if true, would plausibly entitle the plaintiff to relief against the

1    defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of

2    the elements of a cause of action, supported by mere conclusory statements, do not

3

4    suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual

5    content that allows the court to draw the reasonable inference that the defendant is

6

7    liable for the misconduct alleged." *Id.* In contrast, "[w]here a complaint pleads

8    facts that are 'merely consistent with' a defendant's liability, it 'stops short of the

9

10   line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell*

11   *Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also United States ex rel.*

12

13   *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).

14               **2.    Rule 9(b)'s Particularity Requirement**

15

16        False Claims Act complaints must also be pled with particularity under

17   Rule 9(b). *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S.

18

19   Ct. 1989, 2004 n.6 (2016); *Bly-Magee v. Cal.*, 236 F.3d 1014, 1018 (9th Cir.

20   2001). Rule 9(b) requires an FCA relator to plead, with specificity, "the who,

21

22   what, when, where, and how of the misconduct charged." *Cafasso*, 637 F.3d

23   at 1055 (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th

24

25   Cir. 2010)). FCA complaints based on "broad and conclusory allegations" do not

26   meet Rule 9(b)'s heightened pleading standard. *United States v. United*

27

28   *Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016). Rule 9(b)'s stringent

29

30
*Evans, Craven & Lackie, P.S.*
                                        818 W. Riverside, Suite 250
                                        Spokane, WA 99201-0910
                                        (509) 455-5200; fax (509) 455-3632

requirements serve the dual purpose of providing notice to defendants of "the specific fraudulent conduct against which they must defend, but also to deter the filing of complaints as a pretext for the discovery of unknown wrongs[.]"  *Bly-Magee*, 236 F.3d at 1018 (internal quotation marks and citation omitted).

**B.    Legal Requirements to State a Claim Under the FCA**

The Amended Complaint alleges three causes of action under the FCA: violations of (1) 31 U.S.C. § 3729(a)(1)(A); (2) 31 U.S.C. § 3729(a)(1)(B); and (3) 31 U.S.C. § 3729(a)(1)(C).  Compl. ¶¶ 166-77.  A claim for relief under § 3729(a)(l)(A) of the FCA requires the following: (1) a false or fraudulent claim; (2) that was material to the decision-making process; (3) which defendant presented, or caused to be presented, to the United States for payment or approval; and (4) with knowledge that the claim was false or fraudulent.  *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1114 (9th Cir. 2020).  "It is not enough to allege regulatory violations, . . . rather, the false claim or statement must be the '*sine qua non* of receipt of state funding.'"  *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017) (quoting *Ebeid*, 616 F.3d at 998).

To allege a claim for relief under § 3729(a)(1)(B), a relator must show that defendants knowingly made, used, or caused to be made or used, a false record or

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 14

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

statement material to a false or fraudulent claim. *See Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1048 (9th Cir. 2012). Thus, this subsection contains a "double falsity" requirement. *See United States ex rel. Kelly v. Serco, Inc.*, No. 11cv2975 WQH-RBB, 2014 WL 4988462, at *10 (S.D. Cal. Oct. 6, 2014) (citation omitted); *United States ex rel. Oliver v. The Parsons Corp.*, 498 F. Supp. 2d 1260, 1278 n.20 (C.D. Cal. 2006).

A claim under § 3729(a)(1)(C), conspiracy to violate §§ 3729(a)(1)(A) or (B), requires a relator to plead with particularity: (1) the existence of an unlawful agreement between defendants to get a false claim paid; (2) that the defendant willfully joined that agreement; and (3) that the defendant knowingly committed one or more overt acts in furtherance of the object of the conspiracy. *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 899 (D.C. Cir. 2010); *United States ex rel. Marion v. Heald Coll., LLC*, No. 5:12-cv-02067-PSG, 2015 WL 4512843, at *4 (N.D. Cal. July 24, 2015) (dismissing *qui tam* complaint for failure to plead the existence of an agreement to submit *false* claims).

### C.    Relator's Theories of Fraud

Relator asserts that "this case involves both express and implied false certifications, as well as the theory of fraudulent inducement, sometimes described as promissory fraud[.]" Compl. ¶ 27.

False certification claims occur when a claimant knowingly falsely certifies that it has complied with a statute or regulation, the compliance with which is a condition for Government payment. *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1170-71 (9th Cir. 2006). False certification claims can be (1) express or (2) implied. *Escobar*, 136 S. Ct. at 2000-01. The Ninth Circuit has described such claims as follows:

> Express certification simply means that the entity seeking payment certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted. Implied false certification occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim.

*Ebeid*, 616 F.3d at 998. In *Escobar*, the Supreme Court identified two requirements to plead a violation of the FCA under an implied certification theory: (1) the claim must not merely request payment, but also make specific representations about the goods or services provided; and (2) the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements must "make[] those representations misleading half-truths." *Escobar*, 136 S. Ct. at 2000-01; *see also United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1018 (9th Cir. 2018) (recognizing these two requirements).

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Importantly, "mere regulatory violations do not give rise to a viable FCA action, but rather, it is the false *certification* of compliance which creates liability[.]" *Hendow*, 461 F.3d at 1171 (internal quotation marks and citation omitted). And, "for a certified statement to be false under the Act, it must be an intentional, palpable lie." *Id*. at 1172 (internal quotation marks and citation omitted). Last, the misrepresentation must also be "material to the Government's payment decision." *Escobar*, 136 S. Ct. at 2002.

Promissory fraud or fraud in the inducement claims are actionable only in "rare circumstances." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996); *United States v. Monaco Enters., Inc.*, No. 2:12-CV-0046-LRS, 2016 WL 3647872, at *7 (E.D. Wash. July 1, 2016) (same). Under this theory, "liability will attach to each claim submitted to the government under a contract, when the contract . . . was originally obtained through false statements or fraudulent conduct." *Hendow*, 461 F.3d at 1173. Similar to false certification, promissory fraud requires a palpable lie and materiality. *Id*.; *see also Gilead*, 862 F.3d at 902.

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

**D.**    **The Amended Complaint Fails to Plead a Violation of the False Claims Act with Plausibility or Particularity Pursuant to Rules 8(a), 9(b), and 12(b)(6)**

Relying on conclusory allegations of fraudulent conduct instead of particularized facts, as well as erroneous assertions regarding the terms of the contracts, the Amended Complaint fails to set forth a plausible claim for relief under the FCA, particularly against Cardinal Health, who was not even a party to the contracts at issue and is not alleged to have made a single false statement. Rather than alleging that misrepresentations were made, Relator acknowledges that Cardinal Health's role as the supplier of the radiopharmaceuticals was disclosed to VA.  As a result, the Amended Complaint should be dismissed.

**1.**    **Relator Fails to Plead Falsity**

**a.**    **No Subcontracting Limitation Applies to Five of The Eight Contracts**

Relator's primary theory of fraud is that the SDVOSBs fraudulently induced the VA to award the contracts on the premise that the SDVOSBs would comply with subcontracting limitations prohibiting them from supplying products obtained from a large business.  The SDVOSBs allegedly did so by representing that they could themselves independently supply the complex radiopharmaceuticals to be ordered by the VA medical centers. *E.g.*, Compl. ¶¶ 36-37, 60, 92.

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 18

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

But Relator's theory is fatally undercut in the first instance because the clause prohibiting subcontracting with a large company is not incorporated in or does not apply to most of the contracts. As described *supra* (at 9-11), two of the contracts (Albuquerque, NM, and Columbia, SC) contain no such limitation. Exs. 8, 13. For Miami, FL, the subcontracting clause on its face did not apply because the contract was not restricted to SDVOSBs. Ex. 4. And for Denver, CO, as the Relator concedes, the subcontracting limitation was expressly waived. Compl. ¶ 65; Ex. 14. Relator asserts that the Denver waiver doesn't foreclose its claim because the SDVOSB did not "distribute" the products. Compl. ¶ 65. But Relator fails to identify a distribution requirement and does not plausibly plead that the SDVOSB misrepresented compliance with this non-existent requirement. *See id*.[8]

### b.     The Amended Complaint Fails to Plead Fraud with Particularity

Relator fails to specify the details of the fraud to support a viable cause of action under any of its theories of false certification or promissory fraud. For an action premised on the use of false statements and certifications by the SDVOSB

---

[8] Relator also fails to grapple with the significance of the waiver to the plausibility of its claims. VA would not seek a waiver of the subcontracting limitation unless it knew that the SDVOSB intended to rely on a large business to perform.

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1  Defendants to "mislead" the government into awarding them contracts, the

2

3  Amended Complaint is conspicuously devoid of any particularized factual

4  allegations of the content and timing of those statements or how they misled the

5

6  VA. This failure is even more notable given that there are eight separately

7  awarded contracts at issue. Without pleading the particular details of even one of

8

9  the bid proposals submitted by Caring Hands or Logmet, Relator improperly lumps

10  all eight contracts together with broad, conclusory allegations that the SDVOSBs

11

12  "implicitly" represented that they were capable of providing the

13  radiopharmaceuticals on their own. *See, e.g.*, Compl. ¶¶ 92 ("These bids included

14

15  representations—at least implicit ones—that the SDVOSB Defendants were

16  capable of performing the contracts (*i.e.*, supplying the requested

17

18  radiopharmaceuticals) in accordance with all of the applicable requirements,

19  including restrictions on subcontracting . . . "); 50 (alleging the SDVOSB

20

21  Defendants "falsely represented" that they were capable of performing "during the

22  market research phase, the solicitation phase, and the performance phase").

23

24        Relator fails to allege anything about the particulars of these "implicit"

25  representations—nothing about their content, how they were misleading, or even

26

27

28

29

30

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

who supposedly made them.  Such conclusory, vague allegations are insufficient.[9]

*United Healthcare*, 848 F.3d at 1182; *Monaco*, 2016 WL 3647872, at *7; *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385-86 (5th Cir. 2003) (affirming dismissal of promissory fraud claim for failure to plead the particulars of the false representations that induced the contract award).

The Amended Complaint's allegations of the technical requirements pertaining to the radiopharmaceuticals illustrate its Rule 9(b) failures.  Relator sets forth the many, separate technical requirements that the bidding SDVOSBs had to meet to be awarded the radiopharmaceutical contracts.  Compl. ¶¶ 69-78.  But Relator fails to allege any specific misrepresentations made by the SDVOSBs that they would perform those requirements on their own.  For example, while the Amended Complaint alleges at length the various nuclear licenses required in order to possess, handle, compound, and distribute the radiopharmaceuticals—including that the solicitations required bidders to provide *proof* of those licenses to VA— Relator does not allege a single false statement by the SDVOSBs that they

_____

[9] Relator's failure is further highlighted by the Amended Complaint's allegation that the SDVOSBs made false representations at *multiple* stages, pre- and post-award, for *each* contract, while wholly failing to provide the content of any one false statement on any one of the contracts at any stage.  *E.g.*, Compl. ¶ 50.

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 21

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

independently held such licenses. *See, e.g.*, *id.* ¶¶ 48-49, 69-78. In fact, Relator concedes that the SDVOSBs informed the VA that Cardinal Health would fulfill the licensing requirements. Relator admits that the SDVOSBs "mentioned Cardinal in their bids," "included Cardinal's NRC license," or "identified Cardinal as a supplier." *Id.* ¶ 95. In short, the Amended Complaint not only fails to allege false statements with particularity, it concedes that the SDVOSBs were truthful in their proposals.[10]

The Amended Complaint's failure to plead fraud with particularity is even more stark with respect to Cardinal Health. Relator does not (and cannot) allege that *Cardinal Health* submitted proposals to VA for these solicitations; nor that Cardinal Health made any statements to VA; nor that Cardinal Health took any action to cause the SDVOSBs to misrepresent to VA that they were independently

---

[10] The Amended Complaint also alleges that Caring Hands and Logmet each represented, with respect to the VAs at Durham and Albuquerque, respectively, that they were "capable" of bidding on or performing the contracts. Compl. ¶¶ 98-99. These vague allegations are not assertions of the content of any representation by the SDVOSBs, and they fail to show how VA was purportedly misled into believing that the SDVOSBs would comply with the subcontracting limitation (which, as noted above, did not even apply to Albuquerque).

Cardinal Health Motion to Dismiss and Memorandum
in Support: Page 22

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

capable of providing the radiopharmaceuticals or would comply with a subcontracting limitation. While Relator asserts that Cardinal Health ultimately supplied the radiopharmaceuticals and provided information concerning the technical requirements for doing so, it does not allege that this information was false or that the SDVOSBs concealed this from the VA. The Amended Complaint should therefore be dismissed.

### c.     Relator's Implied Certification Theory Fails

Relator's theory of implied certification fails for an additional, independent reason—the Amended Complaint fails to allege that the claims for payment submitted by the SDVOSBs made any specific representation that was a misleading half-truth because of undisclosed noncompliance with the allegedly incorporated subcontracting limitation. As described above, such a representation is required to make out such a claim. *Escobar*, 136 S. Ct. at 2000-01. Relator merely asserts in conclusory fashion that the SDVOSB invoices to VA "implied" that they had performed the contracts in conformity with all requirements. Compl. ¶ 104. The Amended Complaint skips right over the necessary prerequisite—that the invoice made a specific representation that would be rendered false by the failure to disclose noncompliance with material contractual requirements. *Id*. As a result, the Amended Complaint fails to plead any implied certification theory.

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 23

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1   *Escobar*, 136 S. Ct. at 2000-01; *see also, e.g.*, *United States ex rel. Lewis v. Cal.*

2   *Inst. of Tech.*, No. 2:18-cv-05964-CAS(RAOx), 2019 WL 5595046, at *8-9 (C.D.

3   Cal. Oct. 28, 2019) (concluding that the relator failed to plead falsity under an

4   implied certification theory and dismissing FCA fraud claim); *cf. United States ex*

5   *rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 332-33 (9th Cir. 2017) (affirming summary

6

7   judgment because invoices made no specific representations about performance).

8

9                    **d.     Relator's Claim of Conspiracy Fails**

10          Relator's § 3729(a)(1)(C) claim also fails for additional, independent

11

12   reasons.  First, because conspiracy involves an agreement to commit a violation of

13   another FCA cause of action, the Amended Complaint's failure to plead a violation

14   of §§ 3729(a)(1)(A) or (B) undermines the plausibility of a conspiracy to do so.

15

16   *See, e.g.*, *Pencheng Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 89 (D.D.C.

17

18   2014) ("[T]here can be no liability for conspiracy where there is no underlying

19   violation of the FCA.").  Second, Relator fails to plead with particularity the

20

21   existence of an unlawful agreement between the Defendants to get a false claim

22   paid, that Cardinal Health willfully entered into an agreement to defraud the

23

24   government, or any act by Cardinal Health in furtherance of that unlawful

25   agreement.  *See Miller*, 608 F.3d at 899.  The only alleged "agreement" among the

26

27   Defendants is Cardinal Health's agreement with each SDVOSB to supply

28

29

30

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1    radiopharmaceuticals.  That is not unlawful nor an agreement to get a *false* claim

2    paid.  Lacking plausible, particularized allegations, this cause of action has no legs.

3
              **2.    Cardinal Health Did Not *Cause* the SDVOSBs to Present or
4                    Make Any False or Fraudulent Claims or Statements to the
5                    VA**
6
7            Relator does not, and cannot, allege that Cardinal Health *itself* presented

8    false claims for payment to the VA or made a single false statement material to a

9
10   false claim.  And, in as much as the Relator can only allege in conclusory fashion

11   that the SDVOSBs—the parties that actually contracted with and submitted claims
12
13   for payment to the VA—made false statements to fraudulently induce the award of

14   the contracts, the Amended Complaint is entirely devoid of factual allegations to
15
16   plausibly suggest that Cardinal Health *caused* the SDVOSBs to do so.

17           The causation element under 31 U.S.C. § 3729 is satisfied if a person
18
19   "causes to be presented," or "causes to be made," a false or fraudulent claim to the
20
21   United States for payment or approval.  31 U.S.C. §§ 3729(a)(1)(A)-(B).  The FCA

22   can impose liability on "any person who knowingly *assisted in* causing the
23
24   government to pay claims which were grounded in fraud, without regard to

25   whether that person had direct contractual relations with the government."  *United*
26
27   *States v. Mackby*, 261 F.3d 821, 827 (9th Cir. 2001) (quoting *United States ex rel.*

28   *Marcus v. Hess*, 317 U.S. 537, 544-45 (1943)).  For example, subcontractors on
29
30

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

government contracts may cause the submission of a false claim by overbilling the prime contractor or providing a defective product for which government ultimately pays. *See, e.g.*, *United States v. Bornstein*, 423 U.S. 303, 313 (1976) (subcontractor's shipment of falsely branded tubes that it knew would be packaged in kits for the government caused prime contractor to submit false claims).

The FCA "penalizes a person for his own acts, not for the acts of someone else." *Bornstein*, 423 U.S. at 312. The appropriate focus of the causation inquiry, therefore, is on "'the specific conduct of the person from whom the Government seeks to collect'" and "whether that specific conduct *causes* the presentment of a false claim." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 714 (10th Cir. 2006), *abrogated on other grounds by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (2019) (citation omitted). The Circuit Courts agree that the connection between the conduct of the defendant and the false statement or false claim must show *proximate*, not merely "but for," causation. *See, e.g.*, *Sikkenga*, 472 F.3d at 714 (proximate causation test "separates the wheat from the chaff, . . . winnowing out those claims with only attenuated links between the defendants' specific actions and the presentation of

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 26

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4

the false claim").[11]  Moreover, "mere knowledge of the submission of claims and knowledge of the falsity of those claims is insufficient to establish liability under the FCA."  *Id*.

5
6
7
8
9
10
11
12
13
14

Relator utterly fails to plead that Cardinal Health *caused* the SDVOSB Defendants to submit a false statement or false claim on *any* of the contracts.  The Amended Complaint alleges that Cardinal Health provided input on the technical requirements of the bids prepared by the SDVOSBs, such as whether Cardinal Health could provide the products sought.  Compl. ¶¶ 51, 105, 106.  But Relator makes a giant leap in concluding that Cardinal Health's role as the supplier of the

15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

[11] *See also United States v. Hibbs*, 568 F.2d 347, 349 (3d Cir. 1977) (adopting proximate causation test because "a causal connection must be shown between loss and fraudulent conduct" while "a broad 'but for' test is not in compliance with the [FCA]"); *United States ex rel. Schwedt v. Planning Rsch. Corp.*, 59 F.3d 196, 200 (D.C. Cir. 1995) (agreeing with *Hibbs*); *United States v. Luce*, 873 F.3d 999, 1012 (7th Cir. 2017) ("proximate causation comports with the FCA's statutory purpose"); *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1107 (11th Cir. 2020) ("proximate causation is a useful and appropriate standard by which to determine whether there is a sufficient nexus between the defendant's conduct and the submission of a false claim").

30

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
radiopharmaceuticals caused the SDVOSBs to make false representations in their bids as to compliance with subcontracting rules or the SDVOSBs' capabilities.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
Relator does not allege facts to show that Cardinal Health encouraged the SDVOSBs to lie to the VA in their proposals. Relator does not even allege that Cardinal Health was aware of the SDVOSBs making any inaccurate or false statements; nor that Cardinal Health knew of the subcontracting limitation that is the basis of the SDVOSBs' supposed noncompliance. *Sikkenga*, 472 F.3d at 714 (mere knowledge of the submission of false claims is insufficient to show causation). Indeed, Cardinal Health was not the prime contractor and had no reason to know of that small business provision in the SDVOSB contracts; Cardinal Health merely supplied the radiopharmaceuticals in accordance with the technical requirements provided to it.

19
20
21
22
23
24
25
26
27
28
29
Unable to plead facts supporting any direct causation, Relator attempts to set forth a "but for" theory of causation, albeit an attenuated one. Relator speculates that "without Cardinal's blessing, the [false] statements [by the SDVOSBs] never would have been made." Compl. ¶ 105. Under Relator's conclusory theory of causation, because "the SDVOSB Defendants would not have been able to bid" without Cardinal Health supplying the radiopharmaceuticals, *id.* ¶ 106, Cardinal Health must therefore be the "cause" of *any* false statements or claims made by the

30

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 28

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
5
6
7
8
9
10

SDVOSBs.  But these allegations fail to provide more than an attenuated, "but for" link (if that) between Cardinal Health's conduct and the alleged false representations made by the SDVOSBs in their bids.  *Sikkenga*, 472 F.3d at 714. Relator's "but for" theory flies in the face of the purpose of the FCA, which is to penalize a person for his own acts, not someone else's.  *Bornstein*, 423 U.S. at 312. Accordingly, the Amended Complaint fails to plead a claim against Cardinal Health and must be dismissed.

11
12
13

### 3.     Cardinal Health Did Not *Knowingly* Cause Any False Statements or False Claims

14
15
16
17
18
19
20
21
22
23

Not only does the Amended Complaint fail to plead that Cardinal Health caused the SDVOSBs to make false claims or false statements material to a false claim, it alleges *no* facts that Cardinal Health *knowingly* caused such false claims or statements.  Relator merely pleads in conclusory fashion that Cardinal Health "knew" of the subcontracting clause and that its role would violate that clause. Mere conclusory allegations do not support a plausible inference of scienter, and the Amended Complaint must therefore be dismissed.

24
25
26
27
28
29

"A violation of a regulatory provision, in the absence of a knowingly false or misleading representation, does not amount to fraud."  *Hopper*, 91 F.3d at 1267 (citation omitted).  Rather, liability under the FCA requires that a defendant "knowingly" present or cause to be presented false claims or "knowingly" make or

30

cause to be made false statements material to a false claim. 31 U.S.C.

§§ 3729(a)(1)(A), (B). A defendant acts "knowingly" when it has "actual

knowledge" of the claim's falsity or when it "acts in deliberate ignorance" or

"reckless disregard" of that falsity. *Id*. § 3729(b)(1)(A). "Innocent mistakes, mere

negligent representations and differences in interpretations are not false

certifications under the Act." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d

1112, 1115 (9th Cir. 2014) (quoting *Hopper*, 91 F.3d at 1267). "The statutory

phrase 'known to be false' does not mean scientifically untrue; it means a lie." *Id*.

(quoting *Hagood v. Sonoma Cnty. Water Agency*, 81 F.3d 1465, 1478

(9th Cir. 1996)).

Moreover, "the Federal Rules do not require courts to credit a complaint's

conclusory statements without reference to its factual context." *Iqbal*, 556 U.S.

at 686. While Rule 9(b) permits scienter to be alleged "generally," a plaintiff may

not evade Rule 8's prohibition against "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements[.]" *Id.* at 678.

> "[G]enerally" is a relative term. In the context of Rule 9, it is to
> be compared to the particularity requirement applicable to fraud
> or mistake. Rule 9 merely excuses a party from pleading
> discriminatory intent under an elevated pleading standard. It
> does not give him license to evade the less rigid—though still
> operative—strictures of Rule 8 . . . . And Rule 8 does not
> empower respondent to plead the bare elements of his cause of

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
    action, affix the label "general allegation," and expect his
    complaint to survive a motion to dismiss.

3
*Id*. at 686-87 (holding that conclusory allegations of scienter failed to state a

4
5
claim); *see also Gonzalez*, 759 F.3d at 1115 (same).

6
    The FCA's scienter requirements are "rigorous" and must be "strict[ly]

7
8
enforce[d]." *Escobar*, 136 S. Ct. at 2002. Accordingly, where a complaint's

9
allegations show only that an inference of scienter is "'merely *possible* rather than

10
11
plausible'" while also allowing for a "plausible and obvious explanation" to the

12
contrary, the complaint is deficient. *Gonzalez*, 759 F.3d at 1116 (citation omitted);

13
14
*see also In re Century Aluminum Co. Sec. Litig*., 729 F.3d 1104, 1108 (9th Cir.

15
16
2013) (affirming dismissal where pleaded facts did not exclude the possibility of

17
defendant's innocuous alternative explanation). The Ninth Circuit regularly

18
19
affirms dismissals of FCA complaints that fail to sufficiently plead factual

20
allegations of scienter. *See, e.g.*, *Gonzalez*, 759 F.3d at 1115; *Adomitis ex rel.*

21
22
*United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64,

23
67-68 (9th Cir. 2020) (scienter insufficiently pleaded even assuming defendant's

24
25
senior officials were aware of the regulatory guidance at issue).[12]

26
[12] Other courts of appeals do the same. *See, e.g.*, *United States ex rel. Wilson v.*

27
*Kellogg Brown & Root, Inc*., 525 F.3d 370, 379 (4th Cir. 2008) (complaint did not

28
29
"set forth specific facts that support an inference of fraud") (internal quotation

30

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1  The Amended Complaint utterly fails to meet these rigorous standards.

2  Relator's allegations that Cardinal Health knowingly caused the SDVOSBs to

3  present false claims or make false statements material to a false claim are either

4  nonexistent or entirely conclusory.  Relator broadly alleges that Cardinal Health

5  "understood the contractual requirements" and "knew that [its arrangement with

6  the SDVOSBs] violated the applicable restrictions on subcontracting."  Compl.

7  ¶¶ 55, 94, 144.  But Relator does not allege any *facts* to show that Cardinal Health

8  was aware of the existence of a subcontracting limitation in any SDVOSB contract,

9  nor that Cardinal Health knew whether or how such a provision applied to Cardinal

10  Health's role in supplying the radiopharmaceuticals.  Instead, Relator offers a

11  conclusory assertion that Cardinal Health must have known of that clause because

12  it is a "sophisticated player . . . with detailed knowledge of the governing legal

13  regime[.]"  *Id.* ¶ 149.  Such conjecture is plainly insufficient.  *See, e.g.*, *United*

14  *States ex rel. Complin v. N.C. Baptist Hosp.*, 818 F. App'x 179, 182, 184 (4th Cir.

marks and citation omitted); *United States ex rel. Raynor v. Nat'l Rural Utils.*

*Coop. Fin., Corp.*, 690 F.3d 951, 957 (8th Cir. 2012) ("[Relator's] complaint made

no factual allegations of knowing fraud."); *United States ex rel. Pilecki-Simko v.*

*Chubb Inst.*, 443 F. App'x 754, 760 (3d Cir. 2011) ("the facts alleged . . . do not

state a plausible claim to relief that [defendant] knew that its claims were false").

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 32

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

2020) (affirming district court's rejection of argument that scienter could be inferred from regulatory violation itself because defendants "were sophisticated entities presumed to know the law"); *United States v. Honeywell Int'l, Inc.*, No. LA CV12-02214 JAK (JCGx), 2014 WL 12579803, at *4 n.8 (C.D. Cal. Jan. 24, 2014) (rejecting argument that defendant was a "sophisticated and experienced government contractor" as insufficient to support a plausible inference of knowledge).[13]

It is hardly surprising that Relator cannot plead facts to demonstrate scienter. As Relator concedes, it was the SDVOSBs that bid on the contracts. *E.g.*, Compl. ¶ 57. Cardinal Health did not contract with the VA—the SDVOSBs did. Relator fails to allege any facts to show that Cardinal Health knew of the alleged false representations in the SDVOSBs' bids or any subcontracting limitation in the contracts, much less that Cardinal Health understood that its supply of the products would impact the SDVOSBs' compliance with their prime contracts, or that Cardinal Health was even aware of requirements unique to small business set-

---

[13] *See also In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1312 (Fed. Cir. 2011) (rejecting conclusory allegation that defendant was a "sophisticated company" to plead scienter in false marking case).

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

asides such as the subcontracting provision at issue here.[14]

The Ninth Circuit's recent decision in *Gilead Sciences, Inc.*, further highlights the inadequacy of Relator's allegations. Reversing the dismissal of a *qui tam* complaint, the Court of Appeals pointed to well-pleaded facts supporting an inference of knowledge, from internal actions such as "altering test results" and "representing that nonapproved [products] came from approved facilities" to practices established "to deceive the government," and "hide its fraud," including "'intentional, palpable lie[s],' made with 'knowledge of the falsity and with intent to deceive.'" 862 F.3d at 904 (citation omitted). The factual allegations of scienter in *Gilead* could not be more distinct from Relator's conclusory assertions of Cardinal Health's "knowledge" here.

In stark contrast to *Gilead*, the only plausible inference that the Amended Complaint supports is that Cardinal Health (and the SDVOSBs, for that matter) possessed the *opposite* of any intent to defraud the VA. The Amended Complaint concedes that the SDVOSBs identified Cardinal Health in their bids and were required to submit Cardinal Health's nuclear licenses to be awarded the contract.

---

[14] Even if Cardinal Health was aware of the subcontracting limitation, this would still not support a plausible inference that it *knowingly* caused the SDVOSBs to misrepresent to VA that they would comply with that provision in their contracts.

Cardinal Health Motion to Dismiss and Memorandum
in Support: Page 34

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

*E.g.*, Compl. ¶¶ 70, 95.  Relator further admits that the VA would order the radiopharmaceuticals on a daily basis directly from Cardinal Health.  *Id*. ¶ 101. Thus, far from concealment or misrepresentation, the Amended Complaint pleads that the Defendants openly disclosed who would supply the radiopharmaceuticals. These facts do not support an inference that Defendants "lied" to the VA. *Gonzalez*, 759 F.3d at 1115.  This failure independently compels dismissal.

### 4.     The Alleged Fraud Was Not Material to Any Government Decision to Pay A Claim

Even if the Relator could sufficiently plead that the SDVOSBs misrepresented that they would comply with the subcontracting limitation, a failure to comply with a contract term does not create FCA liability if it was not material to the Government's decision to pay or, in this case, award the contract.  *See, e.g.*, *Escobar*, 136 S. Ct. at 2003 ("The False Claims Act is not an all-purpose antifraud statute . . . or a vehicle for punishing garden-variety breaches of contract or regulatory violations.") (internal quotation marks and citation omitted); *Hopper*, 91 F.3d at 1266 (same).  Relator again fails to plead factual allegations to meet its burden here, relying instead on bald, conclusory assertions.  And what facts Relator does plead only demonstrate that compliance with a subcontracting limitation was not material to the VA's award of the contracts.

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 35

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."  31 U.S.C. § 3729(b)(4).  The materiality standard is "rigorous" and "demanding."  *Escobar*, 136 S. Ct. at 2003.  Materiality cannot be found where noncompliance is minor or insubstantial.  *Id.* at 2004; *see also Gilead*, 862 F.3d at 905.  It is the Relator's burden to plead materiality with both plausibility *and* particularity.  *Escobar*, 136 S. Ct. at 2004 n.6.

In *Escobar*, the Supreme Court enumerated several factors for evaluating whether a complaint sufficiently alleges materiality:

> [W]hen evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive.  Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement.  Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material.  Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Id.* at 2003-04; *see also Gilead*, 862 F.3d at 906 (evaluating allegations of materiality under the *Escobar* factors).  Notably, even a seemingly substantial

1  noncompliance can be immaterial to the Government.  *See United States ex rel.*

2  *Berg v. Honeywell Int'l, Inc.*, 740 F. App'x 535, 538 n.5 (9th Cir. 2018).

3

4          Relator fails to meet its burden to plead materiality with plausibility and

5  particularity.  Not one of the *Escobar* factors weigh in favor of an inference of

6  materiality.  *First*, none of the contracts identifies compliance with any limitations

7  on subcontracting as a condition of payment.  *See* Exs. 1-8.  Indeed, only three of

8  the SDVOSB contracts even include such a restriction.  *See id*.; *see also supra* at 9-

9  11.  Thus, the first *Escobar* factor does not support materiality.

10

11          *Second*, the Amended Complaint does not allege, even in conclusory

12  fashion, that "the defendant knows that the Government consistently refuses to pay

13  claims in the mine run of cases based on noncompliance" with the subcontracting

14  limitation present in some of the contracts.  *Escobar*, 136 S. Ct. at 2003.  This

15  *Escobar* factor, too, does not support materiality.

16

17          *Third*, the Amended Complaint's allegations support an inference that the

18  VA has paid particular claims on these contracts in full despite its actual

19  knowledge that the subcontracting limitation was violated, which "is very strong

20  evidence that [this requirement is] not material."  *Id*.  As discussed above, the

21  subcontracting limitation did not permit the SDVOSBs to provide products from a

22  large business such as Cardinal Health unless a waiver was granted.  Thus, any

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 37

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

reliance on Cardinal Health (or any other large business, for that matter) would

breach that limitation.  But the Amended Complaint acknowledges that the VA

knew about Cardinal Health's role on the contracts both during the proposal and

performance periods.  For example, the SDVOSBs "mentioned Cardinal in their

bids," "included Cardinal's [nuclear] license, or identified Cardinal as a supplier."

Compl. ¶ 95; *see also id*. ¶ 158.  During performance, the VA ordered the

radiopharmaceuticals from Cardinal Health directly and Cardinal Health physically

delivered those orders to the VA.  *Id*. ¶ 101; *see also id*. ¶¶ 51-52 (Cardinal Health

"stepped in to actually provide the products" because radiopharmaceuticals are

"difficult to prepare and handle.").  Relator's concession that the VA was aware

that Cardinal Health was involved in these contracts is an admission that

compliance with the subcontracting limitation was *not* material to the VA.  The

VA awarded the contracts in spite of this knowledge.  That is "very strong

evidence" of immateriality.  *Escobar*, 136 S. Ct. at 2003.

Relator's painstaking effort to detail the reasons that the SDVOSBs were not

capable of supplying the products without Cardinal Health provides further, strong

evidence of immateriality.  Relator alleges no fewer than nine requirements that the

SDVOSBs had to demonstrate they could meet to be awarded the contracts, each

of which could only have been performed by Cardinal Health.  *See* Compl. ¶¶ 70-

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

78 (detailing requirements to, *e.g.*, have and provide specialized licenses, to be regularly established in the radiopharmaceutical business and demonstrate equipment, facilities and personnel to meet the VA's requirements, including for prompt delivery on a daily basis). After detailing those highly specialized requirements, Relator asserts that the "SDVOSB Defendants knew that they could not perform the contracts[,]" and concludes that they "could not have thought otherwise." *Id.* ¶¶ 81-82. But Relator omits an obvious, additional conclusion: *Nor could the VA have thought otherwise*. Having set forth a multitude of specialized technical requirements for the radiopharmaceutical contracts that the SDVOSBs had no possible ability to perform themselves, Relator backs itself into a corner, as its own pleading demonstrates the very implausibility of the subcontracting limitation being material to the VA for these awards.

　　*Fourth*, for largely the same reasons, the Amended Complaint also demonstrates that the VA *regularly* pays the SDVOSB claims despite actual knowledge that the subcontracting limitation was not met, and has signaled no change in position, which is also strong evidence that it is not a material requirement. *Escobar*, 136 S. Ct. at 2003-04. The contracts here date back to 2014. Exs. 1, 3. Several included option periods that were exercised by the VA over multiple years. And two of the contracts are currently still being performed.

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

Exs. 6, 7.  Relator's initial complaint was filed more than three years ago on November 14, 2017 (ECF No. 1).  But the VA has not terminated the contracts still in progress nor has the Government taken any action with respect to any of the Defendants.  These facts, too, weigh heavily against materiality.  *See United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017) (upholding determination that compliance was not material where agency continued to approve claims for years after the allegedly fraudulent conduct was disclosed); *see Kelly*, 846 F.3d at 334-35 (affirming summary judgment where government accepted contractor's reports despite non-compliance with regulatory guideline); *United States ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027, 1034 (D.C. Cir. 2017) (affirming summary judgment where government investigated relator's allegations and took no adverse action while continuing to approve claims).

Relator attempts to create an inference of materiality by pointing to four "protests."  Compl. ¶¶ 119-26.  But those protests are largely irrelevant, are vaguely pleaded, and hardly demonstrate that the VA "consistently refuses to pay claims in the mine run of cases based on noncompliance" with the subcontracting limitation.  *Escobar*, 136 S. Ct. at 2003.  In fact, they aren't evidence of a "refusal" to pay "claims" based on noncompliance with the subcontracting limitation at all.  That a protest led VA to take corrective action in its source selection process is not

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

relevant evidence; and Relator can only speculate that action was "likely" because of the protest. Compl. ¶ 125. Nor is GAO sustaining a protest challenging an award decision by the VA evidence that VA refused to pay claims involving noncompliance with a subcontracting limitation; if anything, it suggests the opposite. The fourth protest alleges that Senator Heinrich, on behalf of Relator, "raised concerns" that led to the Logmet Albuquerque contract being "terminated." *Id*. ¶ 129. To the extent that vague allegation can provide any type of inference, it is that VA's action was prompted by the Senator, not that VA refused to pay claims based on noncompliance with the subcontracting limitation. Moreover, the VA did not terminate the Albuquerque award—Logmet completed the eight-month period of performance and the VA did not exercise the option year. *See* Ex. 8; Compl. ¶ 62 (alleging that Logmet has received payment from the VA for the awarded performance period of January through September 2017). Thus, each of Relator's purported examples demonstrating that the Government consistently refuses to pay claims do nothing of the sort.

Nor does Relator's citation of inapposite Government "enforcement actions" meet its burden to plead materiality. *See id*. ¶¶ 132-33. Relator's string of citations citing to two reports analyzing the *Department of Defense's* use of SDVOSB set-aside awards have nothing to do with the VA set-asides at issue here.

Cardinal Health Motion to Dismiss and Memorandum
in Support: Page 41

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1  *See id*. ¶ 132.  Relator's citations to eight press releases about settlements of

2  unrelated actions are similarly inapposite.  In fact, all of those settlements were

3  based on facts distinguishable to those alleged here, such as an alleged scheme of

4  bid rigging; a large business that *created* an SDVOSB to win a contract; an

5  SDVOSB receiving kickbacks; criminal conspiracy indictments; a plea agreement

6

7  for charges that the individual knew that the company did not meet the SDVOSB

8

9  size/status requirements; a plea agreement for improperly corrupting and impeding

10  an SBA size determination; and a false representation that a joint venture included

11

12  an SDVOSB member.  *See id*.  Finally, Relator's reference to *United States ex rel.*

13  *Savage v. Wash. Closure Hanford LLC*, No. 2:10-CV-05051-SMJ (E.D. Wash.

14

15  Aug. 24, 2017) is also misplaced.  *See* Compl. ¶ 133.  In *Savage*, the large business

16

17  was the direct contractor with the agency and allegedly misrepresented the small

18

19  business status of its subcontractors, violating its subcontracting plan.  *Savage*,

20  2017 WL 3667709, at *2.  That is not this case.

21

22      In sum, the holistic materiality analysis espoused by the Supreme Court

23

24  overwhelmingly weighs against any potential inference of materiality.  Because the

25  Amended Complaint fails to plead materiality with plausibility and particularity as

26

27  required, it must be dismissed.

28

29

30

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

## IV.    CONCLUSION

For the foregoing reasons, Cardinal Health respectfully requests that the

Court dismiss Relator's Amended Complaint for failure to meet the pleading

standards of Rules 8(a), 9(b), and 12(b)(6).

Dated:  December 4, 2020                    Respectfully submitted,

                                            **EVANS, CRAVEN & LACKIE, P.S.**

                                            */s/ James B. King*
                                            James B. King, WSBA #8723
                                            Evans, Craven & Lackie, P.S.
                                            818 W. Riverside Ave., Ste. 250
                                            Spokane, WA 99201
                                            (509) 455-5200
                                            (509) 455-3632 facsimile
                                            jking@ecl-law.com

                                            Brian Tully McLaughlin, *pro hac vice*
                                            Lyndsay A. Gorton, *pro hac vice*
                                            Crowell & Moring LLP
                                            1001 Pennsylvania Avenue, NW
                                            Washington, DC 20004
                                            (t) (202) 624-2500
                                            (f) (202) 628-5116
                                            BMcLaughlin@crowell.com
                                            LGorton@crowell.com

                                            *Counsel for Defendants Cardinal
                                            Health, Inc., Cardinal Health 414, LLC
                                            d/b/a Cardinal Health Nuclear
                                            Pharmacy Services, and Cardinal
                                            Health 200, LLC*

Cardinal Health Motion to Dismiss and Memorandum
in Support:  Page 43

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Daniel Hugo Fruchter
Tyler Howard Louis Tornabene
US Attorney's Office
920 W. Riverside Ave., Ste. 300
Spokane, WA 99210-1494
Email: dnaiel.fructher@usdoj.gov
Email: USAWAE.TTornabeneECF@usdoj.gov
*Counsel for Plaintiff*

Laura E. Hill
US Dept of Justice
Commercial Litigation Branch – Civil Div.
P.O. Box 261
Ben Franklin Station
Washington, DC 20004
Email:      laura.e.hill@usdoj.gov
*Counsel for Plaintiff*

Kathleen Paukert
Paukert & Troppman PLLC
522 W. Riverside Ave., Ste. 560
Spokane, WA 99201
Email: kpaukert@pt-law.com\
*Counsel for Plaintiff*

Tejinder Singh
Goldstein & Russell PC
7475 Wisconsin Ave., Ste. 850
Bethesda, MD 20814
Email: tsingh@goldsteinrussell.com
*Counsel for Plaintiff*

Cardinal Health Motion to Dismiss and Memorandum
in Support

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1  Eva Gunasekera
2  Michael A. Sullivan
3  Renee Brooker
   Finch McCranie LLP0
4  225 Peachtree Street NE
5  1700 South Tower
   Atlanta, GA   30303
6  Email:  eva@finchmccranie.com
7  Email:  msullivan@finchmccranie.com
   Email:  reneebrooker@finchmccranie.com
8  *Counsel for Plaintiff*
9
10 Daniel R. Hayward
   Hayward Law, PLLC
11 905 W. Riverside Ave., Suite 505
12 Spokane, WA  99201
13 Email:      dan@haywardlaw.net
   **Counsel for D's Venture LLC dba Logmet:Solutions LLC**
14 **And Demaurice Scott**
15
16 John M. Scorsine
17 John M. Scorsine, PLLC, dba Kanthaka Group
   1465 N. Union Blvd., Suite 100
18 Colorado Springs, CO 80909
19 Email:      jscorsine@kanthakagroup.com
   **Counsel for D's Venture LLC dba Logmet:Solutions LLC**
20 **And Demaurice Scott**
21
22
23
24
25
26
27
28
29
30
   Cardinal Health Motion to Dismiss and Memorandum
   in Support

1 | John H. Guin
2 | Law Office of John H. Guin, PLLC
3 | P.O. Box 31210
  | Spokane, WA 99223
4 | Email: john@guinlaw.com
5 | **_Counsel for Caring Hands Health Equipment &_**
  | **_Supplies, LLC and Obie B. Bacon_**
6 |
7 |                                 **EVANS, CRAVEN & LACKIE, P.S.**
8 |                          By s/ James B. King, WSBA #8723_
9 |                                 James B. King, WSBA #8723
10 |                                Attorneys for Defendants
11 |                                Evans, Craven & Lackie, P.S.
12 |                                818 W. Riverside Ave., Ste. 250
                                   Spokane, WA 99201
13 |                                (509) 455-5200
14 |                                (509) 455-3632 facsimile
                                   jking@ecl-law.com
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |
29 |
30 | Cardinal Health Motion to Dismiss and Memorandum
   | in Support

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632