James B. King, WSBA #8723
Evans, Craven & Lackie, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(t) (509) 455.5200
(f) (509) 455.3632
jking@ecl-law.com

Brian Tully McLaughlin, *pro hac vice*
Lyndsay A. Gorton, *pro hac vice*
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(t) (202) 624.2500
(f) (202) 628.5116
BMcLaughlin@crowell.com
LGorton@crowell.com

*Counsel for Defendants Cardinal
Health, Inc., Cardinal Health 414, LLC
d/b/a Cardinal Health Nuclear
Pharmacy Services, and Cardinal
Health 200, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA, *ex rel.* UPPI, LLC,**<br><br>Plaintiff-Relator,<br><br>v.<br><br>**CARDINAL HEALTH, INC., *et al.*,**<br><br>Defendants. | Case No.  2:17-cv-378-RMP<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS BY CARDINAL HEALTH, INC., CARDINAL HEALTH 414, LLC, AND CARDINAL HEALTH 200, LLC**<br><br>Hearing Date: 03/29/21<br>Without Oral Argument |

Cardinal Health Motion to Dismiss and Memorandum
in Support

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

# <u>TABLE OF CONTENTS</u>

I.    Introduction ................................................................................................1

II.    Argument ...................................................................................................3

    A.    Relator Seeks to Avoid the Pleading Standards ................................3

    B.    Relator Fails to Plead Falsity .........................................................5

        1.    The Amended Complaint Fails to Plead
            Fraud with Particularity ......................................................5

        2.    Relator's Disputes with the Contracts Are
            Unavailing ...........................................................................7

        3.    Relator's Implied Certification Theory Fails ............... 10

        4.    Relator's Claim of Conspiracy Fails ............................ 11

    C.    Cardinal Health Did Not Cause the SDVOSBs to Present
       or Make Any False or Fraudulent Claims or Statements
       to the VA ......................................................................................12

    D.    Cardinal Health Did Not Knowingly Cause the
       SDVOSBs to Present Any False Statements or False
       Claims.........................................................................................15

    E.    The Alleged Fraud Was Not Material to the VA ...............................19

III.    Conclusion ................................................................................................23

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adomitis ex rel. United States v. San Bernardino Mountains Cmty.*
  *Hosp. Dist.*,
  816 F. App'x 64 (9th Cir. 2020) ................................................................16, 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................3

*Bly-Magee v. Cal.*,
  236 F.3d 1014 (9th Cir. 2001) .........................................................................4

*Cimino v. IBM Corp.*,
  No. 13-cv-00907, 2019 WL 4750259 (D.D.C. Sept. 30, 2019) .......................15

*Ebeid ex rel. United States v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) ...........................................................................4

*Gonzalez v. Planned Parenthood of L.A.*,
  759 F.3d 1112 (9th Cir. 2014) ..................................................................8, 9, 17

*Green v. Wachovia Mortg. FSB*,
  No. CV-11-3047-RMP, 2012 WL 13018692 (E.D. Wash. Oct. 15,
  2012) ................................................................................................................8

*Shaw v. AAA Engineering & Drafting, Inc.*,
  213 F.3d 519 (10th Cir. 2000) ........................................................................18

*United States ex rel. Berg v. Honeywell Int'l, Inc.*,
  740 F. App'x 535 (9th Cir. 2018) ................................................................7, 23

*United States ex rel. Campie v. Gilead Sciences, Inc.*,
  862 F.3d 890 (9th Cir. 2017) ....................................................................11, 22

*United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*,
  874 F.3d 905 (6th Cir. 2017) ..........................................................................12

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

*United States ex rel. Janssen v. Lawrence Mem. Hosp.*,
   949 F.3d 533 (10th Cir. 2020) ........................................................23

*United States ex rel. Marcus v. Hess*,
   317 U.S. 537 (1943)........................................................................13

*United States ex rel. Savage v. Washington Closure Hanford LLC*,
   No. 2:10-CV-05051-SMJ, 2017 WL 3667709 (E.D. Wash. Aug.
   24, 2017) ..........................................................................................20

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of*
   *Utah*,
   472 F.3d 702 (10th Cir. 2006) ........................................................14

*United States ex rel. Strubbe v. Crawford Cnty. Mem. Hosp.*,
   915 F.3d 1158 (8th Cir. 2019) ........................................................12

*United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
   336 F.3d 375 (5th Cir. 2003) ..........................................................6

*United States v. Bornstein*,
   423 U.S. 303 (1976)..................................................................12, 13

*United States v. Mackby*,
   261 F.3d 821 (9th Cir. 2001) ..........................................................13

*United States v. Monaco Enters., Inc.*,
   No. 2:12-CV-0046-LRS, 2016 WL 3647872 (E.D. Wash. July 1,
   2016) ................................................................................................6

*United States v. Strock*,
   982 F.3d 51 (2d Cir. 2020) ..............................................................20

*United States v. Toyobo Co.*,
   811 F. Supp. 2d 37 (D.D.C. 2011)..................................................14

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) ...........................................3, 4, 5, 6

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   136 S. Ct. 1989 (2016)..............................................................*passim*

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

**Statutes**

31 U.S.C. § 3729(a)(1)(A) ........................................................................................11

31 U.S.C. § 3729(a)(1)(B) ........................................................................................11

31 U.S.C. § 3729(a)(1)(C) ........................................................................................11

**Regulations**

13 C.F.R. § 121.1203 (2016) ......................................................................................8

48 C.F.R. § 52.219-6 (Nov. 2011) ...........................................................................10

48 C.F.R. § 52.219-14 (Nov. 2011) .........................................................................10

**Rules**

Fed. R. Civ. P. 8 ...............................................................................................6, 19

Fed. R. Civ. P. 8(a) ...............................................................................3, 5, 16, 23

Fed. R. Civ. P. 9(b) ..........................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ..........................................................................................23

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

## I.    INTRODUCTION

UPPI's Opposition (ECF No. 66), is as lacking as the Amended Complaint is conclusory.  Relator fails in its attempt to lump Cardinal Health in with the SDVOSB Defendants.  It cannot overcome the Amended Complaint's complete absence of facts to show that Cardinal Health knowingly caused the SDVOSBs to submit false statements to the VA in their bids on these contracts.  Conclusory statements that Cardinal Health "knew" the rules that applied to small business contracts to which it was not a party are plainly insufficient.  Likewise, assertions that the SDVOSBs could not have bid without Cardinal Health as a supplier do not show that Cardinal Health knew of any unidentified false statements by the SDVOSBs, much less that it caused the SDVOSBs to make them.

The Amended Complaint suffers multiple other deficiencies.  First, the Court will search the 60-page Opposition in vain for the identification of any particularized factual allegations in the Amended Complaint about the false content of the SDVOSB proposals that Relator says caused the VA to award the contracts.  Confronted with its reliance on conclusory statements and speculation about the SDVOSBs' alleged false statements, Relator protests that the SDVOSBs simply "must have" misrepresented their capabilities.  "Must have" is a long way from pleading requisite facts that show it.

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

Relator also tries to walk back the Amended Complaint's concessions (at ¶¶ 95, 101, 103) that render its claims implausible.  UPPI claims that the SDVOSBs' disclosures to the VA that Cardinal Health, not they, would supply the radiopharmaceuticals, and the VA's ensuing daily orders *directly from* Cardinal Health, are of no moment.  But these conceded disclosures underscore Relator's inability to plead the elements of the False Claims Act ("FCA").  First, the disclosures show that the SDVOSBs did *not* lie to the VA (no falsity); second, they show that Cardinal Health did not knowingly cause lies to be made (no causation or scienter); and third, the disclosures show that compliance with the subcontracting limitation / nonmanufacturer rule was not material to the VA (no materiality).  UPPI's desperate assertion that it "cannot be the case" that a contracting officer awarding a contract in spite of their knowledge of noncompliance with a requirement defeats a fraud claim.  In fact, the Supreme Court has made clear that is exactly what it does.

Out of further desperation, UPPI attempts to rewrite the contracts, asserting that the subcontracting limitation / nonmanufacturer rule applies even if the contract or contracting officer specifies otherwise, and then implausibly arguing that the contracting officer's conduct does not matter anyways because they did not know the rules.  Relator even resists the plain import of the SBA's waiver of the

Cardinal Health Reply in Support of Motion to
Dismiss:  Page 2

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1  nonmanufacturer rule on the Denver contract, which expressly permits a large

2  business to supply the products.  UPPI's disagreement does not create a False

3  Claims Act cause of action.

4

5      The Amended Complaint's multiple pleading failures require its dismissal.

6

7  **II.    ARGUMENT**

8

9      **A.    Relator Seeks to Avoid the Pleading Standards**

10     Relator stresses that plausibility under Rule 8(a) does not require a

11 probability of success.  No one disputes that, but UPPI omits that plausibility

12 requires "more than a sheer possibility that a defendant has acted unlawfully," and

13 that pleading facts that are "merely consistent with" liability fail to satisfy the

14 standard.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  UPPI

15 also ignores a key principle: the Court is "not bound to accept as true a legal

16 conclusion couched as a factual allegation."  *Id*.

17

18     Similarly, under Rule 9(b), "mere conclusory allegations of fraud are

19 insufficient."  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180

20 (9th Cir. 2016) (quotation omitted).  Rather, the plaintiff must allege "the who,

21 what, when, where, and how of the misconduct charged, including what is false or

22 misleading about a statement, and why it is false."  *Id*. (internal citations omitted).

23

24     Citing a 30-year old securities fraud case, Relator (at 7) asks the Court to

25 relax Rule 9(b)'s standards because the content and details of the SDVOSBs'

Cardinal Health Reply in Support of Motion to
Dismiss:  Page 3

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

proposals to the VA—the fraudulent conduct that purportedly induced the awards—are only within the SDVOSB's knowledge.  But Relator omits that the Ninth Circuit has *expressly refused* to apply that exception to FCA cases:

> As [relator] points out, in the securities fraud context we have held that "Rule 9(b) may be relaxed to permit discovery in a limited class of corporate fraud cases where the evidence is within a defendant's exclusive possession."  We are not persuaded that this limited principle should be applied in this case.  To jettison the particularity requirement simply because it would facilitate a claim by an outsider is hardly grounds for overriding the general rule, especially because the FCA is geared primarily to encourage insiders to disclose information necessary to prevent fraud on the government.

*Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010); *see United Healthcare*, 848 F.3d at 1180 n.10 ("Although many courts require less particularity 'when some matters are beyond the knowledge of the pleader and can only be developed through discovery,' we declined to apply that principle to claims under the False Claims Act.") (citing *Ebeid*, 616 F.3d at 999); *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001) (dismissing conclusory FCA complaint and noting that relator "should be able to comply with Rule 9(b)").

In short, Rule 9(b)'s requirements are not to be relaxed in FCA cases simply because a relator lacks "insider" knowledge to plead the key facts and details of the fraudulent *conduct* with particularity.  This is not a case in which the relator *is* able to plead the specific details of the fraudulent scheme and only lacks details about

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

the actual claims for payment. *See, e.g.*, *United Healthcare*, 848 F.3d at 1180 ("It is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.") (internal quotation marks and citation omitted). Here, the Amended Complaint lacks particular details about *not only* the claims for payment, but *also* the fraudulent conduct that purportedly led to those claims—the alleged misrepresentations by the SDVOSBs in their bids. The Ninth Circuit has refused to relax Rule 9(b) in FCA cases. This Court should follow that precedent.

### B.    Relator Fails to Plead Falsity

The Amended Complaint falls far short of meeting Rule 8(a) and 9(b).

#### 1.    The Amended Complaint Fails to Plead Fraud with Particularity

The Amended Complaint is devoid of the necessary factual detail about the false promises that allegedly induced the VA to make the awards. Relator alleges various requirements that it claims bidders had to meet in order to qualify for award, and asserts that the SDVOSBs could not meet them on their own. Am. Compl. ¶¶ 69-78. But UPPI fails to plead any facts about the misrepresentations that the SDVOSBs purportedly made in order to fraudulently induce the award of the contracts. The Amended Complaint offers only a broad, unsupported assertion that the proposals contained "implicit" representations that the SDVOSBs "were

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

capable of performing the contracts." *Id.* ¶¶ 80-81, 92, 98-99.  Missing is the content of the SDVOSBs' statements or submissions to the VA, implicit or otherwise, and how those statements were false and caused the VA's award decision.  UPPI also claims that the SDVOSBs made false statements at the market research and performance phases, but doesn't specify what they were either.

At bottom, Relator's claim amounts to nothing more than its assumption (Opp'n at 28) that the SDVOSBs "must have misrepresented their capacity" to be awarded the contracts.  This does not suffice under Rules 8(a) or 9(b).  *See, e.g.*, *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (affirming dismissal of fraudulent inducement claim for failure to allege facts as to "what was said before, during, or after the contract negotiations to indicate that the contract was entered" into fraudulently); *United Healthcare*, 848 F.3d at 1182 ("broad and conclusory" allegations insufficient); *United States v. Monaco Enters., Inc.*, No. 2:12-CV-0046-LRS, 2016 WL 3647872, at *7 (E.D. Wash. July 1, 2016) (promissory fraud claim dismissed as lacking factual support).

It is no surprise that the Amended Complaint is so lacking in detail—UPPI is no insider, but an association of competitor pharmacies, and the few details it does plead only undermine its claims.  For instance, UPPI alleges the SDVOSBs provided Cardinal Health's license and/or "identified Cardinal as a supplier" to the

1  VA to meet bid requirements (Am. Compl. ¶ 95).  The VA's acceptance of the

2  SDVOSBs' bids despite knowing that Cardinal Health would be the supplier is

3  fatal to Relator's theory of its case.  UPPI also concedes (*id*. ¶ 101) that the VA

4  placed daily radiopharmaceutical orders *directly with* Cardinal Health.  The VA

5  was not misled as to who would supply these nuclear products in the slightest.

6  

7  

8       Relator does identify one statement by an SDVOSB relating to the

9  Albuquerque contract.  Relator alleges that Logmet told the VA that "Cardinal was

10  supplying the products."  Am. Compl. ¶ 103.  This statement only *negates* UPPI's

11  claim that the SDVOSBs misled the VA that they would be complying with the

12  subcontracting limitation / nonmanufacturer rule.  UPPI fails to plead

13  particularized allegations because none support its case.[1]

14  

15             **2.    Relator's Disputes with the Contracts Are Unavailing**

16       Faced with the actual contracts subject to judicial notice that fail to

17  

18  ────────────────

19  [1] UPPI's opinion that the VA improperly awarded the contracts as set-asides does

20  not make this a fraud case.  *See United States ex rel. Berg v. Honeywell Int'l, Inc.*,

21  740 F. App'x 535, 537-38 (9th Cir. 2018) (affirming dismissal where proposals did

22  not comply with governing regulations but were nonetheless truthful).  "That the

23  [VA] should have rejected [the SDVOSBs'] proposals under the [governing

24  requirements] does not mean that [the proposals] were false."  *Id*. at 538.

Cardinal Health Reply in Support of Motion to
Dismiss:  Page 7

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

incorporate the subcontracting limitation / nonmanufacturer rule, Relator argues that it will somehow show that the contracts don't actually mean what they say if the Court is willing to favor it with an "inference" contradicting their plain meaning. Opp'n at 12. UPPI's request is contrary to well-settled precedent that a court "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (internal quotation marks and citation omitted); *see also Green v. Wachovia Mortg. FSB*, No. CV-11-3047-RMP, 2012 WL 13018692, at *6 (E.D. Wash. Oct. 15, 2012) (same). The Court should not draw inferences in Relator's favor that are contradicted by the contracts.

UPPI also argues that certain small business regulations "necessarily applied" to contracts even if not included in them. However, it is a basic tenet of government contracting that the contracts are the contracts and only the contracting officer has the authority to change their requirements. *E.g.*, ECF No. 60-5 at 97 ("Under this contract . . . the Contracting Officer is the only person authorized to approve changes or modify any of the requirements.").[2] Cardinal Health addresses

---

[2] Relator also incorrectly states (at 13-14) that a *small business* is responsible for requesting a waiver of the nonmanufacturer rule on a given procurement. To the contrary, only a contracting officer may do so. *See* 13 C.F.R. § 121.1203 (2016).

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

UPPI's other arguments below.

**Denver**.  Relator admits that the subcontracting limitation / nonmanufacturer rule was waived, expressly permitting a large business to supply the products in spite of the contract being a set-aside.  UPPI argues, however, that the waiver was ineffective because it "describes Logmet as 'a small business distributor of radiopharmaceuticals.'"  Opp'n at 23.  Even if this were true, it would not render the waiver ineffective.  But it is not true.  The waiver does not reference Logmet or any SDVOSB and does not identify any information provided to the VA by them.  *See* ECF No. 60-15.  The Court should not accept Relator's self-serving speculation about what Logmet told a contracting officer concerning its status when there is nothing in the waiver about it.  *See Gonzalez*, 759 F.3d at 1115.

**Columbia**.  Relator claims that even though the plain language of the documents says that the limitations on subcontracting "were not applicable" to the Columbia award or the follow-on bridge contract, ECF No. 60-14 at 259, the Court should believe Relator's speculation otherwise.  This deserves no further response.

**Miami**.  Relator disputes that the second Miami contract (ECF No. 60-5) was awarded as "unrestricted", but again the plain language of the contract contradicts its position.  UPPI argues that the contract was not in fact "unrestricted" because set-aside clauses appear, but ignores that these clauses

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
*expressly* provide that they apply only to "[c]ontracts that have been totally set aside or reserved for small business concerns . . . ." 48 C.F.R. § 52.219-6 (Nov. 2011); 48 C.F.R. § 52.219-14 (Nov. 2011). As a result, they are irrelevant.

5
6
7
8
9
10
11
12
**Albuquerque**. Relator again asks the Court to ignore the absence of the subcontracting limitation / nonmanufacturer rule in the contract. *See* ECF No. 60-9 at 231, 238-42. UPPI insists (at 21-22) that, as a set-aside,[3] the small business regulations *must have* applied, even though the contracting officer chose not to incorporate them in the contract. Relator offers no support for this assertion.

13
14
15
16
**Durham, Birmingham, and San Antonio**. While these contracts did incorporate the subcontracting limitation / nonmanufacturer rule, that fact does not show the falsity of any representation—far from it, as detailed above and below.

17
18
### 3. Relator's Implied Certification Theory Fails

19
20
21
22
23
24
25
26
27
UPPI asserts that it pleads an implied certification theory under the Supreme Court's requirements even though it fails to include any invoice details. But even if radiopharmaceutical products were alleged to be identified on an invoice, this would in no way imply that such products were manufactured by a small business or that the SDVOSB complied with a subcontracting limitation / nonmanufacturer rule. In *Escobar*, the relator alleged that the medical claims/invoices included

28
29
30
---
[3] Unlike *Miami*, here UPPI happily accepts the contract's set-aside designation.

Cardinal Health Reply in Support of Motion to Dismiss: Page 10

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

payment codes corresponding to specific counseling services, implying they were performed by licensed personnel. Those claims were not reimbursable because the services were in fact provided by unlicensed personnel (including a "doctor" who prescribed a medication that tragically led to a patient's death). *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1997, 2000 (2016). And in *United States ex rel. Campie v. Gilead Sciences, Inc.*, the claims identified medications referring to specific FDA-regulated drugs but concealed that those drugs did not comply with FDA standards. 862 F.3d 890, 902-03 (9th Cir. 2017). *See also* Cardinal Health's Motion to Dismiss, ECF No. 59 ("Mot.") at 23-24 (citing cases UPPI fails to address).

The specific representations in the SDVOSB claims for payment are in no way comparable to the evidence of noncompliance that appeared on the face of the claims in *Escobar* and *Gilead*. This is not a case with mislabeled or noncompliant radiopharmaceuticals, nor does an invoice for such a product imply compliance with subcontracting limitations. *See, e.g.*, Am. Compl. ¶¶ 69-78. UPPI's implied certification theory is meritless.

### 4.    Relator's Claim of Conspiracy Fails

UPPI does not dispute that its § 3729(a)(1)(C) claim fails automatically if a claim under §§ 3729(a)(1)(A) or (B) is not adequately pleaded. Mot. at 24. Nor

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

does Relator point to well-pleaded facts that would establish that Cardinal Health's agreement to supply radiopharmaceuticals was a conspiracy *intended* to violate the False Claims Act. "[I]t is not enough for relators to show there was an agreement that made it *likely* there would be a violation of the FCA; they must show an agreement was made *in order* to violate the FCA." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 917 (6th Cir. 2017) (affirming dismissal and noting that relators provided no specific statement showing that the "plan" was made in order to defraud the government); *United States ex rel. Strubbe v. Crawford Cnty. Mem. Hosp.*, 915 F.3d 1158, 1166 (8th Cir. 2019) (same). There is nothing unlawful about Cardinal Health supplying radiopharmaceuticals to SDVOSBs, nor does Relator allege facts to demonstrate that Cardinal Health intended to help the SDVOSBs defraud the VA. This theory is plainly deficient.

## C.    Cardinal Health Did Not *Cause* the SDVOSBs to Present or Make Any False or Fraudulent Claims or Statements to the VA

The FCA "penalizes a person for his own acts, not for the acts of someone else." *United States v. Bornstein*, 423 U.S. 303, 312 (1976). But UPPI seeks to punish Cardinal Health for alleged misstatements made by the SDVOSBs in *their* bid proposals to the VA, simply because Cardinal Health supplied the products ordered by the VA. Relator's theory is fundamentally flawed.

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

UPPI concedes that Cardinal Health did not submit claims to the VA and made no false statements.  That alone compels dismissal.  And UPPI offers no cases supporting FCA liability where the defendant did not commit a fraudulent act.  Adequately pleaded causation cases are plainly distinguishable from Cardinal Health's conduct here as a supplier of radiopharmaceutical products.  *See, e.g.*, *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 539 n.1, 542-43 (1943) (defendants engaged in bid-rigging to induce award at inflated price); *United States v. Mackby*, 261 F.3d 821, 827-28 (9th Cir. 2001) (defendant *instructed* office manager to substitute doctor's personal identifier on claim forms); *Bornstein*, 423 U.S. at 313 (subcontractor provided falsely branded tubes it knew would be sold to the government).

UPPI fails to allege any specific conduct by Cardinal Health that *caused* the SDVOSBs to make false statements in their proposals to the VA.  It alleges no facts showing that Cardinal Health pressured or encouraged the SDVOSBs to lie to the VA either.  Cardinal Health held no contract with the VA, and UPPI fails to allege any facts to plausibly show that Cardinal Health even knew that a subcontracting limitation might apply to contracts between the SDVOSBs and the VA.  Likewise, UPPI fails to allege facts showing that Cardinal Health knew the SDVOSBs may have been making false statements to the VA; and even if pled,

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

that would not be nearly enough to adequately show Cardinal Health caused the SDVOSBs to do so. *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 714 (10th Cir. 2006) ("[M]ere knowledge of the submission of claims and knowledge of the falsity of those claims is insufficient to establish liability under the FCA.").[4]

Making a bald claim without factual support that some unidentified Cardinal Health employee encouraged or assisted the SDVOSBs to lie to the VA falls far short of what is required to plead causation. And the Amended Complaint's concession that the SDVOSBs often provided Cardinal Health's license to the VA or referred to Cardinal Health as the supplier in discussions with the VA underscores that the VA knew of its involvement and did not care.

Finally, UPPI's discussion of the level of causation required under the FCA is confused. Relator quotes an out-of-circuit district court decision to assert that causation requires that a defendant's conduct be "at least a substantial factor in causing, if not the but-for cause of, submission of false claims." Opp'n at 33 (quoting *United States v. Toyobo Co.*, 811 F. Supp. 2d 37, 48 (D.D.C. 2011)).

---

[4] Relator also offers no facts to supports its conclusory assertion (at 34) that Cardinal Health "encouraged" the SDVOSBs to bid on the contracts to increase its own market share. UPPI's conjecture about Cardinal Health's motive is irrelevant.

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

First, Relator has not pled facts to show that Cardinal Health's conduct played a "substantial" role in causing the submission of false statements/claims.  Second, Relator relies upon the wrong standard.  As set forth in Cardinal Health's Motion (at 26-27), and clarified in a recent opinion from the same district that Relator relied upon, "[t]he clear weight of authority among the circuit courts is that the element of causation for an FCA claim requires a showing that the alleged false statement is *not only the actual, or but-for, cause of the government harm, but also the legal, or proximate, cause for the loss*."  *Cimino v. IBM Corp.*, No. 13-cv-00907, 2019 WL 4750259, at *5 (D.D.C. Sept. 30, 2019) (emphasis added) (discussing cases).  *See also* Mot. at 26-27 (discussing causation).  It matters not, as UPPI fails to show *any* level of causation to pin its claims on Cardinal Health.[5]

### D. Cardinal Health Did Not *Knowingly* Cause the SDVOSBs to Present Any False Statements or False Claims

Just as Relator fails to plead that Cardinal Health *caused* the SDVOSBs to fraudulently induce the award of the contracts, it also fails to plead that Cardinal Health *knowingly* did so.  *See Escobar*, 136 S. Ct. at 2002 (scienter requirement is "rigorous" and must be "strict[ly] enforce[d]").  Relator responds (at 36) that

---

[5]  Relator suggests (at 32) that Cardinal Health "appears to acknowledge" that the Amended Complaint pleads at least but-for causation.  This is not at all the case.

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Amended Complaint paragraphs 148-57 allege facts plausibly supporting scienter. But these paragraphs do not plead facts, must less ones that demonstrate scienter.

First, Relator cannot dispute that a failure to sufficiently plead *factual* allegations supporting an inference of scienter requires dismissal. *See* Mot. at 30-32. The Amended Complaint alleges (¶ 149) that Cardinal Health "is a sophisticated player in this space, with detailed knowledge of the governing legal regime, and of how the set-aside program works." This is precisely the type of conclusory statement that courts regularly hold fails to satisfy Rule 8(a). *See* Mot. at 30-33 (discussing cases). As to UPPI's allegations concerning the Federal Trade Commission (¶¶ 150-54), the Ninth Circuit has already expressed its disfavor of this type of attempt to plead scienter. *See, e.g.*, *Adomitis ex rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64, 67-68 (9th Cir. 2020) (affirming dismissal due to conclusory pleading of scienter and noting that allegations of defendant's prior litigation involving different regulations "are irrelevant to whether [defendant] knew—or acted in deliberate ignorance or reckless disregard of whether—it did not satisfy the [applicable] requirement").

Relator also fails to address the multiple cases cited by Cardinal Health (Mot. at 32-33) holding that an allegation that a defendant is "sophisticated" and presumed to know the law is insufficient to plead scienter. Instead, UPPI responds

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

(at 38) that Cardinal Health is "the leading provider" in the radiopharmaceutical space, only compounding its conclusory pleading.  Again, this has nothing to do with whether Cardinal Health knew of limitations on subcontracting in set-aside contracts.  Relator alleges no *facts* to show otherwise, only speculation (at 37-39) that Cardinal Health "would have" learned of the subcontracting limitation / nonmanufacturer rule in its interactions with the SDVOSBs.  UPPI draws from its old playbook, alleging that Cardinal Health "must have," "would have," and "should have" because it has no facts.  Relator's suggestion that Cardinal Health should have made inquiries puts the cart before the horse and makes little sense.[6]

Third, Relator ignores Cardinal Health's discussion (Mot. at 34) of the *Gilead* case and the contrast between the well-pleaded facts supporting scienter there and the absence of such facts in the Amended Complaint.  Relator instead tries (at 40) to distinguish a separate case, *Gonzalez*, because it involved an ambiguous rule.  But Cardinal Health did not argue in its Motion that it misunderstood the rules.  Rather, it pointed out that the Amended Complaint fails to allege that Cardinal Health even knew about the rules, ambiguous or otherwise.

---

[6] Relator's suggestion is all the more far-fetched given that Cardinal Health was not a party to the contracts, many of which did not contain the provisions at issue, nor were those provisions in any supply/subcontract held by Cardinal Health.

Cardinal Health Reply in Support of Motion to Dismiss:  Page 17

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Fourth, Relator (at 41) mischaracterizes Cardinal Health's position regarding UPPI's concession that the SDVOSB proposals to the VA disclosed that Cardinal Health would supply the radiopharmaceuticals (*see, e.g.*, Am. Compl. ¶ 95).  UPPI refers to this as a "government knowledge" defense.  But Cardinal Health's argument is more straightforward.  UPPI admits in the Amended Complaint that the SDVOSBs and Cardinal Health acted in a way that was wholly inconsistent with either having fraudulent intent.  UPPI's concession that Cardinal Health was disclosed as the "supplier" undermines Relator's speculative assertion that the "true scope" of Cardinal Health's role was knowingly kept from the VA.  The applicable rule would not have allowed any products to be manufactured / supplied by a large business like Cardinal Health, but Relator acknowledges that the VA was told that Cardinal Health would be doing just that, and that the VA would be *directly ordering* the products from Cardinal Health, not through the SDVOSBs. *Id*. ¶ 101.  Relator's "government knowledge" cases are misplaced.[7]  UPPI

---

[7]  For instance, in *Shaw v. AAA Engineering & Drafting, Inc*., 213 F.3d 519, 534 (10th Cir. 2000), it was the *plaintiff* that informed the government—here, it was the *defendants* that did so, undermining an inference of scienter.  Moreover, *Shaw* cites Ninth Circuit cases holding that government knowledge can, as a matter of law, preclude scienter.  *Id*.  Last, UPPI's citation of only pre-*Escobar* cases

Cardinal Health Reply in Support of Motion to
Dismiss:  Page 18

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1  concedes that the SDVOSBs disclosed Cardinal Health as the supplier, precluding

2  any inference of a knowing concealment or misrepresentation.

3

4  **E.     The Alleged Fraud Was Not Material to the VA**

5  As set forth in Cardinal Health's Motion (at 35-42), Relator fails to allege

6  materiality with the requisite plausibility or particularity, and even concedes that

7  the SDVOSBs disclosed Cardinal Health's role on the contracts to the VA.  *See*

8  *also* Am. Compl. ¶¶ 70, 95, 101, 103.  UPPI attempts to evade the Amended

9

10  Complaint's concessions by explaining how it believes materiality *should* be

11  determined, rather than how it must be determined under the seminal *Escobar* case.

12

13  First, Relator argues (at 46) that "[d]ismissals on the pleadings for lack of

14  materiality are rare."  A simple Westlaw search reveals otherwise.  More

15  importantly, the Supreme Court has spoken to this issue:

16

17  > We reject [relator's] assertion that materiality is too fact
> intensive for courts to dismiss False Claims Act cases on a
> motion to dismiss or at summary judgment.  The standard for
> materiality that we have outlined is a familiar and rigorous one.
> And False Claims Act plaintiffs must also plead their claims
> with plausibility and particularity under Federal Rules of Civil
> Procedure 8 and 9(b) by, for instance, pleading facts to support
> allegations of materiality.

18

19

20

21

22

23

24

25

26  *Escobar*, 136 S. Ct. at 2004 n.6.  Here, the Amended Complaint's threshold lack of

27  sidesteps acknowledging that government knowledge is *also* plainly relevant to the

28  *materiality* inquiry, including at the pleading stage.  *See* Mot. at 37-40.

29

30

Cardinal Health Reply in Support of Motion to
Dismiss:  Page 19

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

particularity as to the SDVOSBs' alleged misrepresentations leaves the Court no basis to even begin to assess their materiality to the VA's award decisions.

Second, in its Motion (at 40-42), Cardinal Health explained the irrelevance of the various "protests" and "enforcement actions" cited in the Amended Complaint in a failed attempt to show the materiality of the subcontracting limitation / nonmanufacturer rule to the VA.  Unable to refute this argument, Relator searches for new support, citing (at 47) to *United States ex rel. Savage v. Washington Closure Hanford LLC*, No. 2:10-CV-05051-SMJ, 2017 WL 3667709 (E.D. Wash. Aug. 24, 2017), and *United States v. Strock*, 982 F.3d 51 (2d Cir. 2020), as "violations in analogous cases" that were deemed material.  Neither case is analogous.  In *Savage*, the relator alleged that a *large business prime contractor* mispresented that it was subcontracting work to disadvantaged small businesses when those businesses did not qualify as such.  In *Strock*, the misrepresentation concerned a business falsely certifying that it was an SDVOSB.  These cases involved clear cut lies, and no disclosure to the government about the true status of the businesses that would be doing the work as in this case.  These cases are not "analogous" to the violations of the subcontracting rule alleged here.

UPPI next describes (at 48) recently-enacted legislation that it claims shows that the "Government also actually cares about this issue."  But a basic purpose of

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

the materiality inquiry is to determine whether *noncompliance* with—not the mere existence of—a regulation, contract, or law is important to the agency paying the claims. Relator's point is also irrelevant—the contracts here were all awarded years before the legislation was enacted. If anything, this development shows that compliance with the subcontracting clause was previously not material.

Relator again tries to evade the concessions it made in the Amended Complaint that the SDVOSBs disclosed to the VA that they were not following the subcontracting limitation / nonmanufacturer rule (to the extent it was a requirement at all) by using Cardinal Health as their supplier. Indeed, the Amended Complaint concedes that the VA ordered the products *directly from Cardinal Health*. Am. Compl. ¶ 101. The VA's decision to accept this arrangement and make payments under the contracts is "strong evidence" that compliance with that clause was *not* material to the VA. *See* Mot. at 37-40; *Escobar*, 136 S. Ct. at 2003-04.

Notably, Relator also ignores Cardinal Health's argument (Mot. at 38-39) that the Amended Complaint's own allegations (¶¶ 70-78, 101) demonstrate the implausibility of the VA concluding, based on market research or otherwise, that the SDVOSBs were capable of providing the radiopharmaceuticals without relying on an actual radiopharmaceutical supplier such as Cardinal Health. Indeed, Relator

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

concedes that the VA directly ordered the products from Cardinal Health.  The subcontracting limitation / nonmanufacturer rule was not material to the VA.

Relator's reliance on *Gilead* (at 52-53) does not help it to meet its burden to establish materiality.  In *Gilead*, a dispute between the parties about what the Government knew and when created a factual question as to materiality.  862 F.3d at 895-96.  There is no such dispute here; Relator concedes in the Amended Complaint that the VA was told of Cardinal Health's involvement as early as the proposal stage.  *Gilead* is also distinguishable because most if not all of the payments made after the government learned of the noncompliance issue were for different, compliant versions of the drugs.  No inference could therefore be drawn that compliance was immaterial to the government.  *Id*. at 906-07.

*Gilead* is not this case by a longshot.  The contracts here were straightforward government contracts for the procurement of commercial items pursuant to which VA placed orders directly from Cardinal Health.  The VA had the right to terminate any of the SDVOSB contracts for its convenience or default, issue a new solicitation, and award a new contract.  *See, e.g.*, ECF No. 60-8 at 210. It chose not to, and continued to pay the invoices with knowledge of Cardinal Health's involvement from the outset and years after notice of this lawsuit.  That is again "very strong" evidence of immateriality.  *Escobar*, 136 S. Ct. at 2003.

Finally, UPPI (at 52) cites a string of out of circuit and unpublished decisions to argue that the VA's continued payment on the contracts since the filing of this action should not defeat materiality. But, as discussed above, Cardinal Health need not rely on post-lawsuit behavior by the VA, as Relator's allegations confirm that the VA awarded the contracts and paid claims for the radiopharmaceuticals long before this suit was filed even though it knew that Cardinal Health's involvement was inconsistent with the subcontracting limitation/ nonmanufacturer rule. Even so, the Government's inaction in the face of this suit further undermines an inference of materiality. *See, e.g.*, *United States ex rel. Janssen v. Lawrence Mem. Hosp.*, 949 F.3d 533, 542 (10th Cir. 2020) (upholding dismissal where the government continued paying claims years after receiving qui tam allegations) (citing *Berg*, 740 F. App'x at 538); *see also* Mot. at 40 (additional cases).

## III.    CONCLUSION

For the foregoing reasons and those in its Motion, Cardinal Health respectfully requests that the Court dismiss Relator's Amended Complaint with prejudice for failure to meet the pleading standards of Rules 8(a), 9(b), and 12(b)(6). *See, e.g.*, *Adomitis*, 816 F. App'x at 67-68 (affirming denial of leave to

amend where relator could not identify facts, only conclusory allegations, that might plausibly cure the complaint's deficiencies).

Pursuant to the Court's initial scheduling order (ECF No. 46), Cardinal Health did not request oral argument, but stands ready to address any questions the Court may have.

Dated: March 15, 2021

Respectfully submitted,

**EVANS, CRAVEN & LACKIE, P.S.**

*/s/ James B. King*
James B. King, WSBA #8723
Evans, Craven & Lackie, P.S.
818 W. Riverside Ave., Ste. 250
Spokane, WA 99201
(509) 455-5200
(509) 455-3632 facsimile
jking@ecl-law.com

Brian Tully McLaughlin, *pro hac vice*
Lyndsay A. Gorton, *pro hac vice*
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(t) (202) 624-2500
(f) (202) 628-5116
BMcLaughlin@crowell.com
LGorton@crowell.com

*Counsel for Defendants Cardinal Health, Inc., Cardinal Health 414, LLC d/b/a Cardinal Health Nuclear Pharmacy Services, and Cardinal Health 200, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all counsel of record.

Daniel Hugo Fruchter
Tyler Howard Louis Tornabene
US Attorney's Office
920 W. Riverside Ave., Ste. 300
Spokane, WA 99210-1494
Email: daniel.fruchter@usdoj.gov
Email:
USAWAE.TTornabeneECF@usdoj.gov

Laura E. Hill
US Dept of Justice
Commercial Litigation Branch – Civil Div.
P.O. Box 261
Ben Franklin Station
Washington, DC 20004
Email: laura.e.hill@usdoj.gov

*Counsel for the United States*

Kathleen Paukert
Paukert & Troppman PLLC
522 W. Riverside Ave., Ste. 560
Spokane, WA 99201
Email: kpaukert@pt-law.com

Tejinder Singh
Goldstein & Russell PC
7475 Wisconsin Ave., Ste. 850
Bethesda, MD 20814
Email: tsingh@goldsteinrussell.com

Renee Brooker
Eva Gunasekera
Tycko & Zavareei LLP
1828 L Street, NW, Suite 1000
Washington, DC 20036
Email: reneebrooker@tzlegal.com
Email: eva@tzlegal.com

*Counsel for Relator UPPI, LLC*

Cardinal Health Reply in Support of Motion to Dismiss

*Evans, Craven & Lackie, P.S.*
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

1

2              **EVANS, CRAVEN & LACKIE, P.S.**

3          By:    /s/ *James B. King*

4              James B. King, WSBA #8723

5              Evans, Craven & Lackie, P.S.
               818 W. Riverside Ave., Ste. 250
6              Spokane, WA 99201

7              (509) 455-5200
               (509) 455-3632 facsimile
8              jking@ecl-law.com

9
               *Counsel for Defendants Cardinal*
10             *Health, Inc., Cardinal Health 414,*
               *LLC d/b/a Cardinal Health Nuclear*
11             *Pharmacy Services, and Cardinal*
               *Health 200, LLC*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
      Cardinal Health Reply in Support of Motion to Dismiss
29                                                      *Evans, Craven & Lackie, P.S.*
                                                        818 W. Riverside, Suite 250
30                                                      Spokane, WA 99201-0910
                                                        (509) 455-5200; fax (509) 455-3632