FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 29, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, exs rel. UPPI, LLC; and UPPI, LLC, qui tam as Relator,<br><br>                Plaintiffs-Relators,<br><br>     v.<br><br>CARDINAL HEALTH, INC; CARDINAL HEALTH 414, LLC, doing business as Cardinal Health Nuclear Pharmacy Services; CARDINAL HEALTH 200, LLC; D'S VENTURES, LLC, doing business as Logmet Solutions, LLC; CARING HANDS HEALTH EQUIPMENT & SUPPLIES, LLC; OTHER UNNAMED SMALL BUSINESS FRONT COMPANIES; OBIE B. BACON; DEMAURICE SCOTT; and UNNAMED INDIVIDUALS (Does),<br><br>                Defendants. | NO: 2:17-CV-378-RMP<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |

BEFORE THE COURT, without oral argument, are Motions to Dismiss

Plaintiff-Relator UPPI, LLC's ("UPPI's" or "Relator's") First Amended Complaint

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 1

("FAC") for Failure to State a Claim from Defendants Caring Hands Health Equipment & Supplies, LLC and Obie Bacon, ECF No. 58; Defendants Cardinal Health, Inc., Cardinal 414, LLC, and Cardinal Health 200, LLC (collectively, "Cardinal Health"), ECF No. 59; and Defendants D's Ventures LLC d/b/a Logmet Solutions, LLC ("Logmet") and DeMaurice Scott, ECF No. 61.

The Court has reviewed the parties' briefing and attached exhibits, the United States' Statement of Interest, ECF No. 67, the remaining docket, the relevant law, and is fully informed.

## BACKGROUND

### *Factual Context*

#### Parties and Contracting Preferences

Relator UPPI, LLC ("UPPI") is a membership organization that is composed of individual, small business, and university-based pharmacies engaged in the business of radiopharmaceuticals. *See* ECF No. 36 (FAC) at 7–8. UPPI is a limited liability company, organized under the laws of Delaware, with its principal place of business in Georgia. *Id.* at 7. According to the FAC, the Cardinal Health Defendants all have a principal place of business in Dublin, Ohio. *Id.* at 8–9. Defendant Caring Hands allegedly has a principal place of business in Ridgeland, South Carolina, and Defendant Obie Bacon is its owner and CEO. *Id.* at 9–10. Defendant Logmet allegedly has its principal place of business in Georgia, and Defendant DeMaurice Scott is its owner and CEO. *Id.* at 10.

1    In this *qui tam* action, UPPI has brought claims against Defendants Cardinal

2    Health, Caring Hands, Logmet, Obie Bacon, DeMaurice Scott, and unnamed

3    individuals ("Does") under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33.

4    UPPI alleges, generally, that since approximately 2013 Defendants have "conspired

5    to fraudulently obtain lucrative Government contracts to supply radiopharmaceutical

6    products to hospitals and pharmacies, including those operated by" the United States

7    Department of Veterans Affairs (the "VA").  ECF No. 36 at 3.

8    The Small Business Administration allegedly has certified Defendant Caring

9    Hands, through Mr. Bacon, and Defendant Logmet, through Mr. DeMaurice, as

10   Service-Disabled Veteran Owned Small Businesses ("SDVOSBs"), Veteran-Owned

11   Small Businesses, and Minority-Owned Small Businesses.  ECF No. 36 at 10.

12   According to Plaintiff's FAC, the Cardinal Health Defendants are not SDVOSBs.

13   *See id.* at 5–6.

14   The Government gives preferential treatment to small businesses, and certain

15   subcategories of small businesses receive a greater degree of preference than small

16   businesses generally.  ECF No. 36 at 3–4.  "[F]or VA contracts especially,"

17   SDVOSBs "receive the most preferential treatment of all."  *Id.* at 4.  Specifically,

18   since 2006, VA contracting officers are required to restrict competition to SDVOSBs

19   so long as the contracting officer reasonably expects that at least two SDVOSBs will

20   bid on a contract and that the award can be made at a fair and reasonable price that

21   offers best value to the United States.  *Id.* at 13 (citing 38 U.S.C. § 8127(d)).  To

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 3

determine whether the bidding process will be restricted to SDVOSBs, VA

contracting officers conduct initial market research. *Id.* at 15.

Supply Contracts

UPPI takes issue in its FAC with the formation and execution of supply

contracts between the VA and the Caring Hands and Logmet Defendants (the

"SDVOSB Defendants") to purchase radiopharmaceutical products for seven VA

medical facilities beginning in approximately 2014. ECF No. 36 at 24–26.

The VA issued solicitations for bids on contracts to supply VA medical

facilities with radiopharmaceutical products, meaning medical products that contain

radioactive material and are used for either diagnostic or therapeutic purposes. ECF

No. 36 at 3, 20. The solicitations were set aside specifically for SDVOSBs or were

otherwise not subject to open competition. *See id.* at 24–26, 50.

Radiopharmaceuticals have a short shelf life, are highly regulated by the

Nuclear Regulatory Commission ("NRC") and other agencies, and are compounded

in nuclear pharmacies by nuclear pharmacists who must satisfy strict licensure

requirements. *Id.* at 18–20. The VA solicitations contained a wide range of

technical requirements "for contractors furnishing radiopharmaceutical products and

services," including specialized nuclear licenses for possessing, compounding, and

distributing radiopharmaceutical products; removal specifications for hazardous

waste, along with the accompanying specialized licenses; and a proximate nuclear

1  pharmacy able to take and fill daily orders and deliver them within hours of

2  compounding.  *See* ECF No. 36 at 17–18, 28–30.

3         Defendant Caring Hands allegedly employs only ten employees, does not hold

4  nuclear licenses, and does not operate nuclear pharmacies.  ECF No. 36 at 31–32.

5  Defendant Logmet allegedly operates from a single-family residence and a rental

6  unit in an office complex, both in Georgia, does not hold nuclear licenses, and does

7  not operate nuclear pharmacies.  *Id.* at 32–33.

8         UPPI alleges that the SDVOSB Defendants, through either explicit or implicit

9  representations, concealed that they were unable to perform the requirements in the

10  VA's solicitation and in fact lacked the necessary licensure, personnel, training,

11  delivery infrastructure, and other technical requirements of the contracts.  *See* ECF

12  No. 36 at 31–33.

13         UPPI acknowledges that the SDVOSB Defendants "sometimes mentioned

14  Cardinal in their bids," by including Cardinal Health's NRC license or disclosing

15  that Cardinal Health would be a supplier.  ECF No. 36 at 34.  However, UPPI

16  alleges that the SDVOSB Defendants were dishonest even in disclosing Cardinal

17  Health's involvement in the contracts because the SDVOSB Defendants allegedly

18  "never disclosed the extremely limited role they intended to play" and instead

19  "stated that they would be acting as authorized distributors, or something similar,

20  implying that they would be taking possession of and delivering radiopharmaceutical

21  products to the Government."  *Id.*

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 5

1      Between 2013 and 2016, the VA awarded eight contracts to the SDVOSB

2   Defendants for supply of radiopharmaceuticals to seven VA facilities, in Durham,

3   North Carolina; Columbia, South Carolina; Miami, Florida; Birmingham, Alabama;

4   San Antonio, Texas; Denver, Colorado; and Albuquerque, New Mexico.  ECF No.

5   36 at 24–25.  UPPI alleges that those contracts either contained, or should have

6   contained by statute, a limitation against subcontracting "that would have precluded

7   the SDVOSB Defendants from allowing Cardinal to perform the majority of the

8   work, and receive the majority of the benefit, from the contract."  ECF No. 36 at 33.

9   The Cardinal Health Defendants submitted the eight contracts at issue with their

10  Motion to Dismiss, and UPPI does not dispute that the contracts are subject to

11  judicial notice.  *See* ECF Nos. 60-2–60-9; 66 at 20; *see also* Fed. R. Evid. 201.

12  Three of the eight contracts, for the VA locations in Durham, Birmingham, and San

13  Antonio, contained the subcontracting limitation.  *See* ECF No. 66 at 20.  UPPI

14  maintains that by statute and regulation, SDVOSB set-aside contracts must contain a

15  subcontracting limitation requiring "'[a]ny concern submitting a bid or offer in its

16  own name . . . that proposes to furnish an end product it did not manufacture'" to

17  "either 'furnish[] in the performance of the contract, the product of a small business

18  manufacturer or producer' or obtain a waiver from the [Small Business

19  Administration.]"  ECF No. 66 at 22 (quoting 48 C.F.R. § 19.102(f)(1) (2011)).

20      UPPI alleges that after the contracts were awarded, the Government "ordered

21  drugs from Cardinal, the SDVOSB Defendants billed the Government, and Cardinal

1    billed the SDVOSB Defendants slightly less than they had billed the Government."

2    ECF No. 36.  UPPI alleges that this arrangement demonstrates that the SDVOSB

3    Defendants "did almost no work on the contracts and added no value to the

4    Government's purchases, but instead acted solely as middlemen—and not even

5    middlemen for products, but only for payments."  ECF No. 36 at 37.

6         ***Procedural History***

7         Relator UPPI filed its initial complaint on November 14, 2017.  ECF No 1.

8    The United States Attorney's Office in this District investigated the allegations, and

9    the United States declined to intervene in this case in May 2020.  ECF Nos. 30; 67 at

10   3.  However, the United States remains a real party in interest.  *See* ECF No. 67 at 2

11   (citing *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934

12   (2009); *U.S. ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 720 (9th Cir.

13   1994)).  UPPI filed the operative FAC on August 25, 2020, in which UPPI alleges

14   that Defendants violated the FCA: (1) when the SDVOSB Defendants presented

15   false or fraudulent claims to the Government, and when the Cardinal Health

16   Defendants caused the presentment of those claims; (2) when the SDVOSB

17   Defendants made or used false records or statements material to their false or

18   fraudulent claims, and when Cardinal Health caused that misconduct; and (3) when

19   the SDVOSB Defendants and Cardinal Health conspired to commit these violations.

20   ECF No. 36 at 12.  Defendants seek to dismiss the FAC with prejudice.  ECF No. 73

21   at 28.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 7

## LEGAL STANDARDS

### *Pleading and Dismissal Standards*

Complaints filed in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant challenges a complaint's sufficiency under Fed. R. Civ. P. 12(b)(6), the court must determine whether the complaint bears "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

The Ninth Circuit has described plausibility as follows:

> When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are "merely consistent with" their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true . . . in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*.

*Petzschke v. Century Aluminum Co. (In re Century Aluminum Co. Sec. Litig.)*, 729 F.3d 1104, 1108 (9th Cir. 2013) (internal quotations omitted) (finding that the

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 8

plaintiffs' allegations "remain[ed] stuck in 'neutral territory'" because they did not tend to exclude the possibility that the defendants' alternative explanation that excluded liability was true) (quoting *Twombly*, 550 U.S. at 557).  The Ninth Circuit also has held that where plaintiff and defendant both advance plausible explanations for defendant's actions, "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis and word break in original).

A party must further plead claims under the False Claims Act, and any other cause of action based on alleged fraud or mistake, in satisfaction of the heightened pleading standard set forth in Fed. R. Civ. P. 9(b).  *See Godecke ex rel. United States v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019).  A plaintiff must allege the circumstances constituting fraud with enough particularity "to give the defendant notice of the particular misconduct so that it can defend against the charge." *Id*. (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).  The plaintiff "must allege the 'who, what, when, where, and how' of the misconduct." *Id*.

A complaint sounding in fraud also must contain facts explaining why the statement was false when it was made.  *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Adomitis ex. rel. United States v. San Bernardino Mountains Cmty. Hosp.*

*Dist.*, 816 F. App'x 64, 66 (9th Cir. 2020).  "When there are multiple defendants in a case, 'Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *United States ex rel. Jones v. Sutter Health*, No. 18-CV-02067-LHK, 2021 U.S. Dist. LEXIS 156308, at \*10-11 (N.D. Cal. Aug. 18, 2021) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (internal quotation in original omitted)).  "The heightened pleading requirement of Rule 9(b) does not apply to allegations regarding defendant's state of mind." *Id.* at \*10.  Therefore, general allegations of knowledge and intent are sufficient to state a claim.  *See also* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court need not "assume the truth of legal conclusions merely because

they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation omitted).

## DISCUSSION

### *Adequacy of the FAC*

As a preliminary matter, the Court notes that the Caring Hands Defendants initially argued for dismissal in part based on a contention that Relator had failed to join a necessary party, the VA, and that this case should be dismissed under Fed. R. Civ. P. 12(b)(7) for failure to join the VA under Fed. R. Civ. P. 19. ECF No. 58-1 at 8. However, the Caring Hands Defendants withdrew that aspect of their Motion to Dismiss in their reply on the basis that the VA has sovereign immunity. *See* ECF No. 72 at 7. Therefore, the Court does not address dismissal under Fed. R. Civ. P. 12(b)(7) any further.

Defendants move to dismiss for three primary reasons.[1] First, Defendants argue that Relator fails to plead falsity. *See* ECF No. 73 at 6. Defendants argue that Relator impermissibly fails to allege the content of any false statement at any stage in the contracting process and instead provides only conclusory, vague allegations that the SDVOSB Defendants made "implicit" or "false" representations that they could provide the radiopharmaceuticals on their own. ECF No. 59 at 29. Moreover, Defendants argue that Relator's concessions that the SDVOSBs disclosed to the VA

---

[1] The Caring Hands, Logmet, and individual Defendants incorporate by reference the Cardinal Health Defendants' reply. ECF Nos. 69 at 1; 72 at 7.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 11

1   that Cardinal Health would supply the radiopharmaceuticals, and that the VA made

2   daily orders directly with Cardinal Health, contradict Relator's unspecific allegations

3   of falsity.  *See* ECF No. 73 at 12.  Second, Defendants allege that Relator fails to

4   allege materiality with plausible or sufficiently particular facts and makes

5   concessions that demonstrate that compliance with any limitation against

6   subcontracting was not material to the VA.  *See* ECF No. 73 at 26.  Third, Cardinal

7   Health disputes the element of scienter by arguing that it did not knowingly cause

8   the SDVOSB Defendants to present any false statements or claims to the

9   Government and that the FAC's conclusory allegations that Cardinal Health "'knew'

10  the rules that applied to small business contracts to which it was not a party are

11  plainly insufficient."  ECF No. 73 at 6.

12      Relator maintains that the FAC adequately alleges the elements of an FCA

13  claim to avoid dismissal.  ECF No. 66 at 18–19.  Relator argues that "the degree to

14  which the Government actually knew of Cardinal's role vis-à-vis any given contract

15  is a factual question that can only be determined after discovery.  It is not a basis for

16  holding that defendants were honest as a matter of law when the complaint alleges

17  otherwise."  *Id.* at 20.  Relator continues that its FAC is sufficiently particular under

18  Rule 9(b) because it identifies the specific contracts at issue for Relator's FCA

19  claims, and the amounts paid under those contracts, as well as "sets forth the key

20  contractual requirements; details the characteristics of the SDVOSB Defendants that

21  made it impossible for them truthfully to certify their compliance with these

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 12

requirements; and provides examples of falsehoods by the SDVOSB Defendants."
*Id.* at 32 (citing ECF No. 36 at 28–30; 35–37).

For its part the United States maintains that Relator's consolidated response sets forth valid reasons to avoid dismissal, but the United States does not directly address any of Defendants' arguments for dismissal under Federal Rules of Civil Procedure 12(b)(6) or 9(b).  *See* ECF No. 67.

The FCA imposes liability for "those who present or directly induce the submission of false or fraudulent claims."  *Universal Health Servs, Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 1996 ("Enacted in 1863, the False Claims Act 'was originally aimed principally at stopping massive frauds perpetrated by large contractors during the Civil War'") (quoting *United States v. Bornstein*, 423 U. S. 303, 309 (1976))*; see* 31 U.S.C. § 3729(a) (imposing civil liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval").

Relator brings three causes of action in its FAC, pursuant to the following relevant text of the FCA:

> (a) Liability for Certain Acts.
> (1) In general. Subject to paragraph (2), any person who —
> (A) knowingly presents, or causes to be presented, a false or
>     fraudulent claim for payment or approval;
> (B) knowingly makes, uses, or causes to be made or used, a false
>     record or statement material to a false or fraudulent claim;
> (C) conspires to commit a violation of subparagraph (A), (B), [or]
>     (G);
> . . .

1

2

3

4

5

(G) knowingly makes, uses, or causes to be made or used, a false
    record or statement material to an obligation to pay or transmit
    money or property to the Government, or knowingly conceals or
    knowingly and improperly avoids or decreases an obligation to
    pay or transmit money or property to the Government, is liable to
    the United States Government for a civil penalty of not less than
    $5,000 and not more than $10,000 . . . plus 3 times the amount of
    damages which the Government sustains because of the act of that
    person.

6

31 U.S.C. § 3729.

7

Count I of the FAC alleges that Defendants knowingly presented or caused to

8

be presented false or fraudulent claims to the government in violation of subsection

9

(a)(1)(A) ("presentment claim").  ECF No. 36 at 59; *see* 31 U.S.C. § 3729(a)(1)(A).

10

Count II of the FAC alleges that Defendants knowingly made, used, or caused a

11

false record or statement material to a false or fraudulent claim in violation of

12

subsection (a)(1)(B) ("false statement claim").  *See* ECF No. 36 at 60; *see* 31 U.S.C.

13

§ 3729(a)(1)(B).  Count III of the FAC alleges that Defendants knowingly conspired

14

to commit a violation of subsections (a)(1)(A) and (a)(1)(B), in violation of

15

subsection (a)(1)(C) ("conspiracy claim").  *See* ECF No. 36 at 60; 31 U.S.C. §

16

3729(a)(1)(C).

17

The Ninth Circuit has identified four essential elements that must be shown to

18

prevail under the FCA pursuant to either section 3729(a)(1)(A) or (a)(1)(B): "'(1) a

19

false statement or fraudulent course of conduct, (2) made with scienter, (3) that was

20

material, causing (4) the government to pay out money or forfeit moneys due.'"

21

*United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1017, 1020 (9th Cir.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 14

2018) (quoting from *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006)).  The Court addresses the adequacy of Relator's FAC according to Rule 9(b)'s heightened particularity requirement for each issue in turn.  *See, e.g., United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551–52 (D.C. Cir. 2002) (holding that "because the False Claims Act is self-evidently an anti-fraud statute, complaints brought under it must comply with Rule 9(b)").

<u>Falsity</u>

The falsity requirement may be satisfied through a showing of express false certification, meaning that defendant falsely "certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Alternatively, a plaintiff may make an implied certification claim to satisfy the first element, in which case the plaintiff must satisfy two conditions:

> First, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths.

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016); *see also Rose*, 909 F.3d at 1017, 1020 (determining that the four basic elements set out in *Hendow*, 461 F.3d at 1174, remain valid after the Supreme Court's decision in *Escobar*, 136 S. Ct. 1989).

1       "Generally speaking, Rule 9(b) requires a plaintiff alleging fraud to: '1)

2  specify the statements that the plaintiff contends were fraudulent; 2) identify the

3  speaker; 3) state where and when the statements were made; and 4) explain why the

4  statements were fraudulent.'" *U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04-CV-0704

5  (ERK), 2009 U.S. Dist. LEXIS 43438, at *10−11 (E.D.N.Y. May 22, 2009) (quoting

6  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).  Dismissal is not appropriate

7  where, accepting plaintiff's factual allegations as true, the competing inferences

8  advocated by defendant and plaintiff are both plausible.  *Starr v. Baca*, 652 F.3d

9  1202, 1216 (9th Cir. 2011).  However, dismissal is appropriate where plaintiff offers

10  only a "*possible* explanation" in the face of an "obvious alternative explanation."

11  *Integra Med. Analytics LLC v. Providence Health & Servs.*, 854 F. App'x 840, 844

12  (9th Cir. 2021) (remanding to the district court for dismissal of plaintiff's claims

13  where the panel held, "We need not accept the conclusion that the defendant

14  engaged in unlawful conduct when its actions are in line with lawful 'rational and

15  competitive business strategy.'" *Id.* (quoting *Twombly*, 550 U.S. at 554)) (emphasis

16  in original).

17       Relator's presentment and false statement FCA claims are based on an

18  explanation that the SDVOSB Defendants, in collaboration with the Cardinal Health

19  Defendants, fraudulently bid on and obtained radiopharmaceutical supply contracts

20  by implying that the SDVOSB had the capacity to and would perform the contracts

21  on their own while "knowing all the while that Cardinal would do the vast majority

1    of the work and receive almost all the revenue under the contract." ECF No. 36 at

2    5–6. However, combing through Relator's FAC, the Court finds that the pleading is

3    replete with speculative and conclusory statements about what Defendants or the VA

4    "may" or "must" have known, but devoid of the specific "statements that the

5    plaintiff contends were fraudulent," the identity of the speaker, "where and when the

6    statements were made," or "why the [specific] statements were fraudulent." *See*

7    *U.S. ex rel. Polansky v. Pfizer, Inc.*, 2009 U.S. Dist. LEXIS 43438, at *10−11; ECF

8    No. 36.

9         Illustratively, the FAC alleges:

10        Notwithstanding their inability to perform the contracts, the SDVOSB
          Defendants bid as if they could perform. These bids included
11        representations—at least implicit ones—that the SDVOSB Defendants
          were capable of performing the contracts (i.e., supplying the requested
12        radiopharmaceuticals) in accordance with all of the applicable
          requirements, including restrictions on subcontracting that would have
13        precluded the SDVOSB Defendants from allowing Cardinal to perform
          the majority of the work, and receive the majority of the benefit, from
14        the contract. In so doing, the SDVOSB Defendants misled the
          Government into awarding the contracts to them.

15   ECF No. 36 at 33. In another part, the FAC alleges, without specifying any

16   statements: "[The SDVOSB Defendants] lacked the necessary facilities, licenses,

17   and technical expertise to manufacture or distribute these complex products. The

18   SDVOSB Defendants knew all this, and in fact never intended to perform the

19   contracts. Nevertheless, they falsely represented otherwise during the market

20   research phase, the solicitation phase, and the performance phase. . . . Cardinal

21   caused the SDVOSB Defendants to make these representations." *Id.* at 21. Relator

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 17

1    further alleges, without any particularity: "Taking the contractors at their word, the

2    Government relied upon their representations.  In this way, the SDVOSB

3    Defendants misled the Government into setting aside contracts. These false

4    statements, and any records used to substantiate them, were material to false or

5    fraudulent claims."  ECF No. 36 at 35.

6          In responding to the Motions to Dismiss, Relator directs the Court to a host of

7    conclusory and unspecific allegations of wrongdoing by Defendants but does not

8    direct the Court to specific statements or implicit representations that Relator

9    maintains were fraudulent.  *See* ECF No. 66 at 19–20 (portion of Relator's response

10   brief gathering citations and accompanying quotations from the FAC[2]).

11   _____

12   [2] Relator directs the Court to the following statements in the FAC: "*See* ¶ 50 ('The
     SDVOSB Defendants made false representations 'during the market research

13   phase, the solicitation phase, and the performance phase.'); ¶ 55 ('Defendants
     exploited Government contracting officers who were either unaware of who was

14   actually performing the contract, unaware of the contractual requirements, unaware
     of the surrounding legal rules, or knowingly or recklessly assisting Defendants in

15   violation of those requirements and rules.'); ¶ 92 ('[T]he SDVOSB Defendants
     misled the Government into awarding the contracts to them'); ¶ 97 ('When the

16   Government conducted pre-solicitation market research and asked SDVOSBs
     whether they could perform the contracts to determine the appropriateness of an

17   SDVOSB set aside, the SDVOSB Defendants told the Government that they could
     when they knew they could not,' and the Government took 'the contractors at their

18   word' and 'relied upon their representations.'); ¶ 102 ('When the SDVOSB
     Defendants were asked whether they would perform or were performing at least

19   50% of the work under the contracts, they falsely answered affirmatively.'); ¶ 140
     ('Instead of being honest, however, Defendants misrepresented and concealed that

20   the 'front companies' did little if any of the work'); ¶ 158 ('[T]he Government's
     contracting officers were deceived by Defendants')."

21

     ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 18

The Court finds that Relator's vague allegations fall short of Rule 9(b)'s heightened particularity requirement. *See Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (The allegations "must set forth more than neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false.") (internal quotation omitted). Nor does the Court find sufficient particularity in Relator's allegation that "every bid the SDVOSB Defendants submitted was . . . a false or fraudulent statement or record material to a false claim" because the bids allegedly contained "explicit or implicit" representations "that the SDVOSB Defendants were capable of performing contracts to provide radiopharmaceuticals to the Government, or were actually performing 50% or more of the work under these contracts, or retaining 50% or more of the revenue[.]" ECF No. 36 at 34–35.

In short, the Court does not find specific allegations in the FAC that Defendants made explicit or implicit statements to conceal Cardinal Health's role in the supply contracts. What is more, the Court does not find Relator's digression into whether the supply contracts must legally have contained a subcontracting limitation relevant to whether Relator sufficiently pleaded fraud, because contractual requirements have no bearing on the truthfulness of Defendants' statements or representations. *See United States ex rel. Berg v. Honeywell Int'l, Inc.,* 740 F. App'x 535, 537–38 (9th Cir. 2018) (affirming dismissal where proposals did not comply with governing regulations but were not false).

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 19

1      Defendants further dispute the plausibility of Relator's theory of liability with

2   a plausible alternative explanation: "There was no conceivable way that the VA

3   could conclude that either SDVOSB was capable of supplying the

4   radiopharmaceuticals on its own. . . . And Relator's own pleadings show that the VA

5   knew of Cardinal Health's involvement, yet awarded the contracts anyway."  ECF

6   No. 59 at 13, n. 1.

7      It is true that the FAC reflects that the VA was aware of Cardinal Health's

8   involvement at the time that the VA awarded and paid claims on the contracts.  *See*

9   ECF No. 36 at 34–35.  Considering the speculative nature of Relator's allegations of

10  false statements, and Relator's acknowledgement that the SDVOSB Defendants at

11  least partially disclosed Cardinal Health's role in supplying the contracted product,

12  the Court does not find Relator's explanation that the VA relied on either explicit or

13  implicit assurances by the SDVOSB Defendants that they independently could

14  perform the contracts in accordance with all technical requirements to be plausible.

15  *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d at 1108 ("When faced with

16  two possible explanations, only one of which can be true and only one of which

17  results in liability, plaintiffs cannot offer allegations that are 'merely consistent with'

18  their favored explanation but are also consistent with the alternative explanation . . . .

19  Something more is needed, such as facts tending to exclude the possibility that the

20  alternative explanation is true . . . ." (internal citation omitted)).  Accepting as true

21  the factual allegations of the FAC, Defendants' "obvious alternative explanation" for

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 20

1  their behavior renders Relator's theory of liability implausible.  *See Starr*, 652 F.3d

2  at 1216; *Integra*, 854 Fed. Appx. at 844.

3      Therefore, the Court finds that the element of falsity has not been pleaded

4  with sufficient particularity for purposes of Rule 9(b) and fails to meet the Rule 8

5  standard requiring a "plausible claim for relief."  Consequently, the Court grants

6  dismissal of Relator's Counts I (presentment claim) and II (false statement claim),

7  under 31 U.S.C. § 3729(a)(1)(A) and (B) on this basis.

8          Materiality

9      A falsehood is material under the FCA if it has "a natural tendency to

10  influence, or be capable of influencing, the payment or receipt of money or

11  property." 31 U.S.C. § 3729(b)(4).  The Supreme Court has held that the materiality

12  standard is "demanding," and the FCA "is not an all-purpose antifraud statute, or a

13  vehicle for punishing garden-variety breaches of contract or regulatory violations."

14  *Escobar*, 135 S. Ct. at 2003.  Furthermore, "if the Government pays a particular

15  claim in full despite its actual knowledge that certain requirements were violated,

16  that is very strong evidence that those requirements are not material."  *Id*.

17      Relator's allegations are insufficient to survive Defendants' Motions to

18  Dismiss as Relator's FAC concedes that the VA paid claims despite knowing that

19  Cardinal Health was supplying radiopharmaceuticals through the VA contracts with

20  the SDVOSB Defendants.  *See* ECF No. 36 at 34 ("The SDVOSB Defendants

21  sometimes mentioned Cardinal in their bids.  For example, they may have included

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 21

Cardinal's NRC license, or identified Cardinal as a supplier.").  Again, whether the radiopharmaceutical supply contracts legally were required to contain, or even did contain, a subcontracting limitation ultimately is immaterial to the viability of Relator's FCA claims because the Court is not determining whether there was a breach of contract or a regulatory violation, only whether Relator sufficiently pleaded the claims in the FAC.

Relator does not sufficiently plead materiality because Relator alleges in the FAC that the VA had knowledge of the Cardinal Defendants' involvement at the time the contracts were formed and the VA still entered those contracts.  *See Escobar*, 136 S. Ct. at 2003.  In addition, the ongoing payment of claims by the VA after the Government declined to intervene in this case further supports a finding that Defendants' alleged wrongdoing was immaterial to the Government's performance of the contracts.  *See* ECF Nos. 30 (Notice filed by the United States in May 2020); 36 (FAC filed in August 2020 alleging wrongdoing continuing through the present); *see also Escobar*, 136 S. Ct. at 2003–04.

Therefore, Relator did not adequately plead the materiality of Defendants' alleged wrongdoing, and the Court dismisses Relator's Counts I (presentment claim) and II (false statement claim), under 31 U.S.C. § 3729(a)(1)(A) and (B), on the basis of lack of materiality in addition to lack of falsity.

/ / /

/ / /

1

<u>Conspiracy</u>

2      To proceed on a claim for civil conspiracy under the FCA, a relator must

3   sufficiently allege "(1) that the defendant conspired with one or more persons to get

4   a false or fraudulent claim allowed or paid by the United States and (2) that one or

5   more conspirators performed an act to effect the object of the conspiracy." *United*

6   *States v. St. Luke's Subacute Hosp. & Nursing Ctr., Inc.*, No. C 00-1976 MHP, 2004

7   U.S. Dist. LEXIS 25380, at *15 (N.D. Cal. Dec. 15, 2004).

8      Because Relator's conspiracy claim requires a viable underlying presentment

9   or false statement claim, Relator's conspiracy claim automatically fails alongside its

10   other FCA claims based on Relator's failure to allege falsity and materiality. *See* 31

11   U.S.C. § 3729(a)(1)(C) (imposing liability for conspiring to commit a violation of 31

12   U.S.C. §§ 3729(a)(1)(A), (B), or (G)). Therefore, the Court dismisses Relator's

13   Count III (conspiracy claim).

14   ***Transfer of Venue***

15      In determining that Relator's claims must be dismissed, the Court need not

16   resolve the requests by the SDVOSB Defendants to transfer venue, which were

17   made in the alternative to dismissal. *See* ECF Nos. 58 at 2; 61 at 2. However, the

18   Court finds compelling the SDVOSB Defendants' arguments to transfer this matter

19   to a more convenient forum pursuant to 28 U.S.C. § 1404(a). The anticipated

20   witnesses and underlying transactions did not occur in this District. *See* ECF No. 72

21   at 4. Moreover, the investigation by the United States Attorney's Office in this

District, after Relator filed the case here, is a tenuous connection, as that work product could be transferred to another United States Attorney's Office without ethical implications.  The Court will reserve ruling on a motion to transfer if and when it is properly noted before the Court.

### *Without Prejudice*

Relator requests leave to file a Second Amended Complaint "unless amendment would be futile."  ECF No. 66 at 68.  Relator does not identify any potential amendments that may cure the deficiencies of the FAC.  However, the Court cannot determine with certainty that future amendment would be futile.  *See Swartz*, 476 F.3d at 761 (affirming district court's decision to dismiss with prejudice where amendment would be futile).   Therefore, the Court will dismiss without prejudice.

Accordingly, **IT IS HEREBY ORDERED** that:

1.    Defendants' Motions to Dismiss for Failure to State a Claim, **ECF Nos. 58**, **59**, and **61**, are **GRANTED**.

2.    Relator's Amended Complaint is **dismissed without prejudice**, and a judgment of dismissal shall be entered accordingly.

**IT IS SO ORDERED.**  The District Court Clerk is directed to enter this Order, provide copies to counsel, and **close the file**.

**DATED** September 29, 2021.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 24